## HARTFORD ACCIDENT & INDEMNITY CO. v. INTERSTATE EQUIPMENT CORPORATION (four cases).
### Civ. Nos. 2788, 3448, 3449–3450.

District Court, D. New Jersey.

Dec. 10, 1947.

792

Coult, Satz, Morse & Coult, and Joseph Coult, all of Newark, for plaintiff.

Emanuel Wagner, of Elizabeth, for defendant.

FAKE, District Judge.

The problems to be solved here arise on motions, by plaintiff's attorney, to amend the several complaints, filed in the above entitled cases. The moving papers state that the amendments are desired, "properly to describe the above named defendant, Interstate Equipment Corporation, as a body corporate organized and existing under the laws of the State of New York, said incorporation having appeared in said actions by its attorney, and having undertaken a defense thereof, and having submitted itself to the jurisdiction of this court." The processes served recited the State of incorporation as being New Jersey.

The basic question presented by the above quoted language is: Has the New York corporation appeared in these cases?

It will be noted from a study of the facts as they are developed that this case presents a unique situation. The movements evidenced by the actions and reactions of the facts as they bear, one on another, result in a picture never before depicted in all its parts.

No case on all fours with this has been cited by counsel on either side, nor has independent research uncovered one. The cases cited are so differentiated by the facts underlying their legal conclusions that quotations of law from them would be inexact. This, of course, is not to deny that quoted language when removed from its context could be set up as major premises to syllogize this case either way one happens to incline.

The record discloses that there are three corporations bearing the name Interstate Equipment Corporation, one incorporated under the laws of the State of New York, another under the laws of New Jersey, and the third under the laws of West Virginia. Each of these corporations maintains an office at 18 West Jersey Street, at Elizabeth, New Jersey, and each is dominated by one Grassmann. The issues primarily involve the New York and New Jersey corporations only and, in the interest of brevity, they will be dealt with here as the New York corporation and the New Jersey corporation.

It appears that the New York corporation was the manufacturer of certain aerial tramway equipment which it furnished for installation, or installed and inspected, at Mt. Kaala, in the Territory of Hawaii, and

on or about the 8th day of April, 1942 an accident occurred in the operation of the tramway which resulted in the death of one person and, injuries to three others, each of whom was employed by an association known as Hawaiian Contractors. The said association of Hawaiian Contractors was covered by compensation insurance policies in which the plaintiff herein was the insurer, and under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., plaintiff made payments in satisfaction for the death and injuries above mentioned. On the making of these payments, plaintiff became subrogated to the rights of the employer as provided by Sec. 933 of the aforesaid Act. The four suits here were instituted for the recovery of the compensation thus paid. Each of these suits was instituted against the New Jersey Corporation, based on the ground of negligence in the "manufacture, installation, inspection and approval of the said aerial tramway."

Processes in these suits were served at Elizabeth, N. J., where the several like named corporations maintained their respective offices or places of business. In case No. 2788 service was made by leaving the papers with "G. M. Kilcarr, Vice-President for said corporation," on the 17th day of March, 1943. In the remaining cases the papers were left with "Frank Lawrence, Secretary of said corporation," on March 31, 1944. At the time these four services were made, Kilcarr was not the Vice-President of the New Jersey corporation, nor, did he hold any office therein. He was, however, the Vice-President of the New York corporation. Nor was Lawrence the Secretary of the New Jersey corporation. He was the Secretary of the New York corporation only.

Each of the three corporate entities, bearing the same name, was, as has been said, under the domination and control of Grassmann. It was he who retained counsel to file answers and defend these suits. On examination Grassmann testified in this connection that it made no difference to him whether the suits were against the New York corporation or the New Jersey corporation. His exact words were: "What difference does it make? Any corporation of mine I defend." As indicative of his mental attitude, I refer to that portion of his testimony wherein he said: "We have three Interstate Equipment Corporations. Anyone getting a Dun & Bradstreet report gets the facts, or any other commercial report. The most stupid person could find out." From this I conclude that Grassmann owned and dominated both corporations, and he, Grassmann, felt the plaintiff's attorney was stupid in not making the inquiry he suggests before the institution of these suits. I will treat of this later.

At the time, the New Jersey corporation was in a moribund state and had been such for years. So inactive had it been that even its owner, Grassmann, was unable to tell who its officers were. Its chief executive had been dead for years and that office has remained vacant. Therefore, it would appear that for all present practical purposes the New Jersey corporation was a dead entity, and well known to be such by the individuals and corporate officers with whose conduct we are here concerned. Whether the West Virginia corporation was or was not in a like condition of non-user does not appear. Nor is this of any moment since the study here is limited to the New York and New Jersey entities.

It appearing that the New Jersey corporation was lying dormant and in an abandoned state: It appearing that processes in these suits were actually served on officers of the New York corporation: It further appearing that these officers were in turn under the domination of Grassmann who in turn owned and controlled both corporate entities, it would take a long stretch of the imagination to say that these three men had no knowledge of the contents of the documents served. I conclude that each of them did have such information, and that they knew full well that the defendant New Jersey corporation was erroneously named in the documents. Thus, through them, the New York corporation became fully advised in the premises.

In this atmosphere an attorney was retained by Grassmann to appear and answer in these suits. Again it is not difficult to spell out what then happened. It was

known to all the men involved that plaintiff's attorney had directed these suits against the wrong defendant, and that he should have sued the New York corporation and not the New Jersey corporation. The attitude of Grassmann's attorney, all through the arguments, and in his brief as well, has been that there was no duty devolving on the New York corporation to advise counsel for plaintiff of the fact that the New Jersey corporation had had no connection whatever with the tramway at Mt. Kaala, nor, was there any such duty devolving on the New Jersey corporation. I will deal with this point later.

Turning now to the pleadings: The answers filed deny the negligence alleged in the complaints and go one step further. They allege contributory negligence by the deceased and the three others who were injured. This latter defense could in no way be availed of by the New Jersey corporation, since, having no connection whatever with the accident, contributory negligence could neither aid nor injure that corporation. Moreover, the only honest answer the New Jersey corporation could file was one in which it would plead no connection whatever with the accident. Had there been no like named and controlled New York corporation, such an answer would undoubtedly have been filed. Under ordinary circumstances one who sues a wholly innocent defendant would learn of his mistake by telephone at once. Such is the normal way of sound practitioners. The attorney for such an innocent defendant would file no answer such as was filed here. One cannot escape the conclusion that the answers filed in these cases were interposed for no other purpose than to lull the plaintiff into a sense of security until the fast running Statute of Limitation would rise up and prevent suits against the New York corporation. Thus serving as an answer in the interest of the New York corporation only. To do this required the active connivance and co-operation of the New York corporation through its well advised president and all around connected agents.

When the foregoing factors are considered, and it is understood that the services of process in these cases would have been valid beyond peradventure as service on the New York corporation but for the absence of a recital of the correct name of the state of its incorporation, and that the service as made actually brought notice home to the New York corporation that plaintiff's attorney intended to sue, not the New Jersey corporation but that certain Interstate Equipment Corporation which had functioned at Mt. Kaala, the New York corporation; and that both these Interstate corporate entities were dominated by the same man, Grassmann, the error, insofar as the New York corporation is concerned, amounts to no more than an amendable misnomer and does not constitute a mistake of identity. This is but another way of saying that by reason of the conduct of the duly constituted officers and agents of the New York corporation and its failure to speak in time after notice, leaves it estopped from saying it is not before this Court.

■ While it is true that the answers filed herein do not contain the name or express authority of the New York corporation, yet nevertheless, this court may look into and behind those answers in the exercise of its ever present equity powers, and it does so in these cases for the purpose of ascertaining whether the New York corporation has in fact, by the conduct of its officers and agents, entered its appearance in these cases, and filed its answers therein, under the mask of the New Jersey corporation. If it has done so this court will hold jurisdiction over it.

In pondering the conduct of the New York corporation and its agents, as depicted by the record here, the true seeker after justice would find nothing to prompt his applause. Indeed there is much which would tend to excite his emphatic disapproval.

■ While it is true that, as a general rule, there would be no obligation upon either the New York or New Jersey corporation or their attorney, to advise plaintiff's attorney of his mistake before the Statute of Limitations had run, as here, and as a general rule, one in the position of a plaintiff's attorney must be diligent in ferreting out the proper parties defendant before suit, as argued by defendant's attorney, yes, even to the extent perhaps of a Dun & Bradstreet report as Grassmann suggests.

However, no such rules, or absence of rules, can be raised to defeat a party where, by the overt acts and inexcusable conduct of the other, he has been lulled into a position of false security. Particularly is this so where, for purposes of delay, sham pleas have been entered, as here.

In conclusion I find that by reason of the matters and things hereinbefore recited, the New York corporation has voluntarily entered this court, through its duly constituted officers and agents and through them it has on full notice accepted service of process, and filed its answers in these cases. The amendments prayed for are allowed and the New York corporation may amend its answers to conform with its position as the true and proper defendant in these cases.