See also D.C., 26 F.R.D. 619.

Stella McSPARRAN, Administratrix of the Estate of Robert G. Weaver, Deceased,

v.

BETHLEHEM MINERALS COMPANY.

Civ. A. No. 25411.

United States District Court
E. D. Pennsylvania.

Aug. 31, 1962.

B. Nathaniel Richter, Kenneth Syken, and David F. Binder, Philadelphia, Pa., for plaintiff.

Thomas E. Comber, Jr., and James Paul Dornberger, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

By this Motion, presented to the court at the pre-trial conference and filed in December 1961 after the pre-trial conference had been held, plaintiff seeks to file a Second Amended Complaint against a defendant, Bethlehem Cornwall Company, not named in either of the prior Complaints to recover for the death of plaintiff's decedent, which occurred December 11, 1957, as the result of an accident of October 15, 1957, on a cause of action under the Wrongful Death Act and another cause of action under the Survival Act, 12 P.S. § 1601 et seq., 20 P.S. § 320.601 et seq. The Second Amended Complaint attached to the Motion alleges that, as the result of the negligence of the defendant, its agents, servants and employees, a piece of steel fell on plaintiff's decedent, causing his death, and that the defendant, being in possession of certain land in this District, had the "direct and exclusive control" of such agents, servants and employees.

The previous Complaints had sought recovery from Bethlehem Minerals Company,[1] the owner of the land, and another corporation[2] and had not alleged that Bethlehem Minerals Company was in possession and control of the land.[3]

Paragraphs 5, 8 and 10 of the First Amended Complaint filed December 10, 1958 (Document No. 6), allege that defendant owned and operated a mine in Berks County, Pa., and plaintiff received injuries on October 15, 1957, causing his death on December 11, 1957, while working in the shaft of the mine due to negligence of defendant, its agents, servants and employees, who were under the direct and exclusive control of defendant.[4] On July 23, 1959, defendant filed an Amended Answer (Document No. 15) to the Amended Complaint, denying these paragraphs and specifically stating:

"All other averments of the Amended Complaint including those of negligence or control on the part of Bethlehem-Cuba Iron Mines Co. or damages resulting therefrom are specifically denied and proof thereof demanded."

In compliance with a STIPULATION of counsel filed October 2, 1959 (Document No. 18), defendant filed a second Answer to the Amended Complaint on October 6, 1959 (Document No. 19), admitting that it owned the land where an iron mine was being excavated (par. 8 of Amended Complaint), denying paragraphs 5 and 10 of the Complaint, and averring as a THIRD DEFENSE:

"Answering defendant was not in control of the area in which the accident happened and/or any of the persons, structures, appliances, tools or other equipment involved in the accident. The control of such was with the plaintiff, and/or his employer, The Austin Company."

On November 7, 1960, defendant filed its answer (Document No. 24) to plaintiff's interrogatory No. 14 (Document No. 13, filed March 20, 1959), which read "State whether and how often periodic inspections or examinations were made of the construction work being done on the crusher house, including the scaffolding in relation thereto, and the crane which

1. Bethlehem Minerals Company is the present name of the corporation against whom the action was brought, the name of the company having been changed from Bethlehem-Cuba Iron Mines Co. on April 14, 1960 (see p. 4 of Document No. 47).

2. Frazier-Davis Construction Co., Inc., was a defendant in the original Complaint. The Complaint against Frazier was dismissed with prejudice (see Document No. 23).

3. In her counsel's letter of April 10, which is attached to this Memorandum Opinion, plaintiff contends that she claimed possession and control of the accident site in paragraph 9 of the original Complaint, but this paragraph alleges operation of a mine and construction of a shaft, whereas the plaintiff's claim, as stated in her pre-trial memorandum (Document No. 38) is for an accident which occurred near, and during the construction of, a crusher house.

4. The Complaint charged negligence of the other original defendant and its agents, servants and employees who were under its control.

was lifting the angle iron which fell upon the decedent." The answer stated:

"14. None made by defendant. Daily inspections of work were made by the Bethlehem Cornwall Company for the purpose of determining progress of the work in terms of percentage figures and whether work met specifications. These inspections were made of the entire job."

Interrogatory 24 and the answer to it filed on November 7, 1960, read as follows:

"24. State exactly and in detail defendant's responsibility for and the nature of any work being done at, about, or in connection with the crusher house or the site of the accident involving the decedent. In particular, describe the defendant's relationship to the crane, angle iron and scaffold involved in the accident."

"24. Defendant had no responsibility as to the work or any of the things mentioned. The crane was owned by Bethlehem Cornwall Company and loaned without operator to Austin Co. The other items mentioned were owned by Austin Co. or third parties, the identity of whom is unknown to defendant."

Both defendant and Bethlehem Cornwall Company are wholly-owned subsidiaries of the Bethlehem Steel Corporation (a holding company which also owns all the stock of Bethlehem Steel Company, on one of whose employees service of process was made) (Documents Nos. 35 and 39), and they have the same liability insurance carrier (Documents Nos. 48 and 49). These two different subsidiary corporations perform different functions in an overall industrial enterprise (p. 8 of Document No. 47). Bethlehem Minerals owned the property and it entered into an operating agreement with Bethlehem-Cornwall under which Bethlehem-Cornwall operated this property and other properties owned by Bethlehem Minerals (p. 9 of Document No. 47). "The income is Bethlehem-Cuba's income, and it pays to Bethlehem Cornwall a royalty per ton of production as Bethlehem Cornwall's fee for performing the function of manager."

The two principal grounds relied on by plaintiff as justifying this permission to file a second amendment to her Complaint more than three years after the action was commenced are rejected for the reasons stated below:

A. Contention that defendant and Bethlehem-Cornwall should be treated as one entity, either because they have common directors and some of the same officers or because they are both subsidiaries of Bethlehem Steel Corporation.

As noted above, these corporations are both subsidiaries of Bethlehem Steel Corporation, which has at least one additional subsidiary. However, each of these two corporations has different functions. Defendant owns land in this country and conducts operations abroad, performing no operating functions in this country where it has virtually no employees (p. 22 of Document No. 47).[5] On the other hand, Bethlehem-Cornwall operates many projects in this country and has several thousand employees here. There is no showing that the books of the companies are not kept completely separate and there is every indication that the corporations are operated as separate entities. Under these circumstances, the Federal cases have consistently indicated that the separate corporate entities of such common subsidiaries of one parent must be respected in the absence of other factors, which are not present in this record.[6] Cf. Cannon Mfg.

5. Defendant enjoyed during 1957 the status of a western hemisphere trade corporation under the Internal Revenue Code (cf. 26 U.S.C.A. §§ 921–922) and apparently cannot engage in operations in this country and still retain such status (see pp. 9 & 23 of Document No. 47).

6. The cases cited in plaintiff's brief (Document No. 56) are quite distinguishable from the situation presented by this rec-

Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Manville Boiler Co., Inc. v. Columbia Boiler Co., E.D.Pa., 204 F.Supp. 389; Manville Boiler Co. v. Columbia Boiler Co. of Pottstown, 269 F.2d 600, 606–607 (4th Cir. 1959). Compare the facts in this case and in the cases cited above with those set forth in Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, at page 298, 37 S.Ct. 506, 61 L.Ed. 1148 (1917).

**B.** Contention that plaintiff has been misled by the conduct of defendant during this suit.

■ As noted above, an examination of the pleadings discloses that the later Answer of the defendant filed in October 1959 (Document No. 19) added nothing misleading to the Answer which had been filed by the defendant in July 1959 (Document No. 15). Also, the deponent in Document No. 46 was not dealing with the attorney for the defendant during the period prior to the running of the statute of limitations (see Document No. 50). Under such circumstances, the allegations in the affidavit of counsel for plaintiff who is now in active conduct of the case, as contained in paragraph 3 of Document No. 46, and the conclusion in paragraph 6 of that affidavit that "Counsel for plaintiff was misled by the defendant's answer and amended answer * * *", where the record shows no reasonable basis for such contention of misleading, are not sufficient to prove such misleading.[7] Plaintiff has cited no case which

would justify the court in ignoring the statute of limitations under these circumstances.[8]

As recently stated by the United States Court of Appeals for the Third Circuit:

"Statutes of limitation frequently involve some hardship, but the alleviation of that hardship is a matter of policy for the (legislature)."

Kaltreider Construction, Inc. v. United States, 303 F.2d 366, 368–369 (3rd Cir. 1962).[9]

■ The real difficulty causing the running of the statute of limitations in this case appears to have been the delays involved in pressing discovery. However, even if the period during which defendant failed to answer plaintiff's interrogatories is disregarded (March 1959 to November 1960), the statute of limitations would have run prior to the time that plaintiff filed this Motion to Amend in December 1961.

Under these circumstances, the motion to file the second amendment to the Complaint and substitute another defendant must be denied.

Notice of this ruling was given to counsel at the supplemental pre-trial conference held May 7, 1962 (see pp. 3 & 4 of Document No. 51).

### ORDER

AND NOW, August 31, 1962, IT IS ORDERED that the motion for leave to amend Complaint (Document No. 43) is denied.

---

ord. For example, in County Theatre Co. v. Paramount Fim Distributing Corp., 166 F.Supp. 221 (E.D.Pa.1951), the substituted defendant carried on exactly the same business, as far as the subject matter of the suit was concerned, as the original defendant, with exactly the same personnel, and it had been formed in compliance with an anti-trust decree which required the original defendant to transfer this aspect of its business to another corporation. The substitution was similar to allowing an amendment to reflect a change in name of the defendant, whereas here the new corporation carries on substantially different business in this country than the landowner which is the named defendant in this suit.

**7.** It is noted that the attorney handling the case for plaintiff during 1958 and 1959, according to this record (see p. 2 of Document No. 50), has filed no affidavit or otherwise substantiated any claim of misleading in this record.

**8.** Plaintiff's and defendant's briefs in this matter have been filed in the Clerk's file as Documents Nos. 56 and 57, respectively.

**9.** This paragraph was added to the opinion after preparation of the draft, which was on hand on May 7, 1962, at the time of the announcement of the court's ruling.