William MUNETZ

v.

EATON YALE AND TOWNE, INC. and Becker Crane Company.

Civ. A. No. 69–950.

United States District Court, E. D. Pennsylvania.

Jan. 8, 1973.

Joseph Lurie, Gerber, Galfand & Berger, Philadelphia, Pa., for plaintiff.

Murphy, Veldorale, Weisbord & Dougherty, Philadelphia, Pa., for Eaton Yale & Towne.

John J. Tinaglia, Philadelphia, Pa., for Strick Corp.

James R. Redeker, of White & Williams, Philadelphia, Pa., for Becker Crane Co.

## MEMORANDUM OPINION AND ORDER

BRODERICK, District Judge.

Presently before this Court is the motion of the plaintiff to amend the caption and to correct the party named in the complaint. The question before this Court is whether the requested amendment would merely correct a misnomer and thus properly name an entity which was already served prior to the running of the applicable statute of limitations, or whether the requested amendment substitutes a new party for the named defendant and is thus barred by the statute of limitations.

In this action to recover damages for personal injuries allegedly suffered by the plaintiff, William Munetz, on May 5, 1967, the complaint filed in this Court on April 30, 1969, named as one of the defendants a "Becker Crane Company, 2000 South Blvd., Charlotte, North Carolina." Plaintiff now, by motion filed with this Court on May 17, 1972, requests this Court to substitute for the non-existent defendant, Becker Crane Company, the defendant which he claims to be the "true" defendant, the Paterson-Leitch Company.

From the records in this matter, the relevant facts appear as follows: The complaint alleges that the defendant Eaton Yale and Towne, Inc., which party

subsequently has been dropped from the action, was engaged in the design, manufacture and sale of a certain machine known as an electric overhead crane for the Strick Corporation; that the defendant Becker Crane Company installed the aforesaid crane in the Strick Corporation's plant; and that plaintiff, while in the course of his employment at the Strick Corporation's plant and while he was engaged in work associated and connected with the operation of the said electric overhead crane, was injured when the crane derailed and fell on him. The complaint, in brief, alleges in count one that the defendants were negligent, and in count two that the crane was defectively designed, manufactured, constructed and installed, thereby creating an unreasonable risk of harm to plaintiff. The service of the summons and complaint was made upon the Becker Crane Company by registered mail at the Charlotte, North Carolina address on June 6, 1969. From the records, it appears that there never was an entity known as the Becker Crane Company; however, there did once exist a Becker Crane and Conveyor Company, which was incorporated on April 30, 1956 under the laws of Ohio. The holders of all of the capital stock of the Becker Crane and Conveyor Company sold all of the capital stock of the company to the Paterson-Leitch Company on November 1, 1960. The Becker Crane and Conveyor Company then was dissolved on December 31, 1963. Its assets were distributed to its sole shareholder, the Paterson-Leitch Company of Cleveland, Ohio, as of December 31, 1963; and then, by contract dated October 30, 1964, which was finally carried out in early 1965, the assets of the Becker Crane and Conveyor Company Division of Paterson-Leitch Company were sold to the Parks-Cramer Company, a Massachusetts Corporation, which had offices at 2000 South Blvd., Charlotte, North Carolina. The Becker Crane Division of Parks-Cramer Company filed an Answer to plaintiff's complaint on February 16, 1970 and, as one of its five affirmative defenses, claimed that although the Parks-Cramer Company purchased certain assets of the Paterson-Leitch Company among which was the use of the name "Becker Crane", it did not assume any of the liabilities under the purchase agreement. On February 20, 1970, counsel for Paterson-Leitch Company entered an appearance in this matter and filed an answer, also on behalf of the Becker Crane Company. In his preamble to the aforesaid answer, the attorney for the Paterson-Leitch Company stated that he was filing an answer "for the reason that plaintiff's counsel claims to have made valid service upon defendant Becker Crane Company and threatens to trace its assets to Paterson-Leitch Co. . . . The answer is filed solely for the purpose of protecting Paterson-Leitch Co. against any liability which might be imposed upon it as a result of the accident described in the complaint."[1] During the discovery period in this case, the plaintiff motioned the Court for an Order requiring the defendants to produce certain documents, and the Court's Order, dated June 4, 1970, so Ordered the production, in part, of all correspondence, contracts, blueprints, drawings, operating manuals, etc. between the defendants and the third-party defendant [Strick Corporation] relating to the sale of an overhead crane bearing the legend "Becker OH5009" and containing Yale equipment Model No. 15614 and Serial No. 431897009. In response to the Court's Order, the president of Paterson-Leitch Company filed an affidavit on June 22, 1970, which in substance stated that he was unable to find any records, correspondence or documents whatsoever relating in any way to an overhead crane bearing the legend "Becker OH5009" and containing Yale equipment Model No. 15614 and Serial No. 431897009. From answers to inter-

1. Docket No. 17, Filed Feb. 20, 1970.

rogatories by Eaton Yale and Towne, Inc., it appears that a crane designed and/or manufactured by Eaton Yale and Towne, Inc. was purchased by Becker Crane & Conveyor Company on a Purchase Order dated August 12, 1960 and was shipped to Becker Crane and Conveyor Company during the latter part of March 1961. In Strick Corporation's Answers to Interrogatories, it further appears that the Becker Crane and Conveyor Company installed six cranes in the building where the aforesaid accident to Mr. Munetz took place, with the identification numbers of these six cranes being OH500-1, OH500-2, OH500-3, OH500-4, OH500-5, and OH500-6. Also, the crane involved in this instant action was installed into the Strick Corporation's plant by Becker Crane and Conveyor Company in 1961.

■ In support of his motion to correct the name of the party named in the complaint, plaintiff argues that the character of his request is that of a petition to correct a misnomer. The "misnomer" rule applies to situations in which the plaintiff has actually sued and served the correct party, the party he intends to sue, but merely mistakenly has used the wrong name of the defendant in the caption of the complaint.[2] For instance, in Lackowitz v. Lummus Co.,[3] the complaint named as a defendant Graver Tank & Manufacturing Company, Inc., which had, prior to service, been dissolved and its assets transferred to Graver Tank and Manufacturing Company, Division of Union Tank Car Company. Since the plaintiff had correctly indicated the state of incorporation and location of the principal office of the parent corporation as well as the location of the division in the complaint, the plaintiff's motion to amend the complaint was granted. And, in United States v. A. H. Fischer Lumber Co.,[4] the plaintiff was allowed to amend the process and pleadings so as to correctly describe the defendant where process had been served on one of the defendants' offices, its attorney had entered a special appearance before the court and there was no doubt that the defendant before the court was the corporation which the plaintiff had intended to be named as the defendant. Thus, the test is whether it is reasonable to conclude that plaintiff had in mind the proper entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether the plaintiff actually meant to serve and sue a different person.[5] In the instant case, it is clear that there is not present a case of "misnomer" and that plaintiff did not initially have in mind the Paterson-Leitch Co. as the entity to be sued. Suit was brought against the Becker Crane Co. and service was made on the Parks-Cramer Co. in Charlotte, North Carolina. Plaintiff, therefore, either intended to sue the non-existent Becker Crane Co. or the Becker Crane & Conveyor Division of the Parks-Cramer Co., which did business at the address where service was made—2000 South Boulevard, Charlotte, North Carolina. Moreover, there is no identity of interest between the Parks-Cramer Co. and the Paterson-Leitch Co. Thus, the effect of the requested amendment is to substitute for the named corporate defendant an entirely new corporation.

However, in arguing that an amendment should be allowed which would re-

2. People of the Living God v. Star Towing Co., 289 F.Supp. 635 (E.D. La. 1968); Longsdorf v. Pennsylvania Greyhound Lines, Inc., 148 F.Supp. 476 (M.D. Pa. 1956).

3. 189 F.Supp. 762 (E.D. Pa. 1960).

4. 162 F.2d 872 (4th Cir. 1947). See Robbins v. Nagelberg, 8 F.R.D. 36 (E.D. Pa. 1948).

5. M. Lowenstein & Sons, Inc. v. American Underwear Mfg. Co., 11 F.R.D. 172 (E.D. Pa. 1951); 2 J. Moore, Federal Practice ¶ 4.44, at 1295.52 (2d ed. 1970).

late back to the date of the filing of the complaint, plaintiff emphasizes the fact that an attorney for Paterson-Leitch Co. has entered an appearance and has filed an answer in this case. These facts, plaintiff claims, now make Paterson-Leitch Co. the "true" defendant. Paterson-Leitch Co., on the other hand, strenuously contends that by the time it learned of the instant suit, the statute of limitations had run on plaintiff's personal injury action and, therefore, any amendment is now barred.

The amendment of service of process is permitted by Rule 4(h) of the Federal Rules of Civil Procedure, anytime in the Court's discretion "unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." [6] In addition, Rule 15(a) permits a party to amend his pleading "when justice so requires." [7] Furthermore, Rule 15(c) provides that the amendment relates back to the date of the original pleading whenever the claim "asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . ." [8] It is clear that the claim which plaintiff is attempting to assert against Paterson-Leitch Co. arose out of the same conduct, transaction, or occurrence which was set forth in the original pleading against Becker Crane Co. In addition, however, two further prerequisites of Rule 15(c) must be met before the amendment can relate back. Rule 15(c) goes on to prescribe that:

An amendment changing the party against whom a claim is asserted re-

lates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.[9]

Thus, if the amended claim arose out of the same conduct, transaction, or occurrence and the two prerequisites are satisfied, then any amendment which changes a party against whom a claim was asserted will relate back to the date of the filing of the complaint.

If plaintiff had in mind initially the proper entity or person and actually had served that intended person or entity, then it is clear that the amendment would be permitted even though the statute of limitations had run as to the person so misnamed in the process and complaint, because the person or entity would already be in court, would have had adequate notice of the pendency of the action, and, therefore, there would be no prejudice to the person or entity by allowing the amendment.[10] However, when the effect of the amendment is to bring before the Court for the first time a completely different person or entity which had not previously had notice of the suit and such amendment, assuming it would relate back, occurs after the applicable statute of limitations has run, then the new person or entity would be prejudiced and the amendment is not

---

6. Fed.R.Civ.P. 4(h).

7. Fed.R.Civ.P. 15(a).

8. Fed.R.Civ.P. 15(a). *See* Porter v. Theo J. Ely Mfg. Co., 5 F.R.D. 317 (W.D. Pa. 1946).

9. Fed.R.Civ.P. 15(c).

10. Sechrist v. Palshook, 97 F.Supp. 505 (M.D. Pa. 1951). *See* Shapiro v. Paramount Film Distributing Corp., 274 F.2d 743 (3d Cir. 1960); McDowell v. Kiehel, 6 F.2d 337 (3d Cir. 1925); Sanders v. Metzger, 66 F.Supp. 262 (E.D. Pa. 1946).

allowed.[11] As was stated by the Court in Graves v. General Insurance Corp.[12]:

> The addition or substitution of parties who had no notice of the original action is not allowed [citations omitted]. Substitution of a completely new defendant creates a new cause of action. Permitting such procedure would undermine the policy upon which the statute of limitations is based.[13]

 Although the relation back of amendments is connected with the policy of the statute of limitations, the notice of the institution of the action which will toll the running of the statute may be either formal or informal.[14] Although Paterson-Leitch Co. is presently before this Court, the first notice which this company had of the commencement of the instant action was its receipt of a letter sometime after June 27, 1969. Even if we assume that this letter was sufficient notice of the pendency of the action to satisfy the first prerequisite of Rule 15(c), this notice came to Paterson-Leitch Co. more than two years after the alleged occurrence of plaintiff's injury on May 5, 1967. Counts one and two of plaintiff's complaint allege the torts of negligence and 402A-strict liability, and the Pennsylvania Statute of Limitations applicable to tortious personal injury is "two years from the time the injury was done." [15] The amendment of the complaint, therefore, will not be allowed as to counts one and two of the complaint, since any such amendment which would relate back to the date of the complaint would prejudice Paterson-Leitch Co. by denying it the defense of the applicable two-year statute of limitations.

In conclusion, we have found that the requested amendment of the complaint to change the name of "Becker Crane Co." to the name of "Paterson-Leitch Co." would not merely be the correction of a misnomer, but would in fact bring a new entity into the instant case as a corporate defendant. While Paterson-Leitch Co. has indeed participated in this matter, its first notice of this suit occurred subsequent to the passage of two years' time from the date of the alleged injury to plaintiff. Therefore, an amendment to counts one and two of the complaint would be prejudicial to Paterson-Leitch Co. by depriving it of the defense of the applicable Pennsylvania statute of limitations for tortious personal injury.

---

11. Graeff v. Rockledge, 35 F.R.D. 178 (E. D. Pa. 1964). *See* Jacobs v. McCloskey and Co., 40 F.R.D. 486 (E.D. Pa. 1966); McSparran v. Gable, 223 F.Supp. 127 (E.D. Pa. 1963); McSparran v. Bethlehem Minerals Co., 210 F.Supp. 21 (E.D. Pa. 1962); Strauss v. Rex, 191 F.Supp. 128 (W.D. Pa. 1960); Kerner v. Rackmill, 111 F.Supp. 150 (M.D. Pa. 1953).

12. 412 F.2d 583 (10 Cir. 1969).

13. *Id.* at 585.

14. Advisory Committee's Notes to the Proposed Amendment of Rule 15(c), 39 F.R. D. 82–84 at 83.

