**Anne YARNELL, Administratrix of the Estate of Harry Yarnell, Deceased**

v.

**Brooke ROBERTS, M.D. and Hospital of the University of Pennsylvania et al.**

Civ. A. No. 70-2294.

United States District Court, E. D. Pennsylvania.

March 19, 1975.

Benedict A. Casey, Philadelphia, Pa., for plaintiff.

Allan H. Starr, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

### I

Presently before the Court are two motions of the plaintiff. Plaintiff seeks leave to amend her complaint, and add Chamberlain Associates as an additional defendant in the above action, or to have the Court rule that the defendant, Hospital of the University of Pennsylvania (Hospital), is estopped from claiming that any doctors, nurses, technicians, and/or other persons who were present at the time of the deceased's operation on or about January 18, 1970, were not its agents, servants and/or employees acting within the scope of their authority. Plaintiff also moves for the production of documents dealing with the relationship between the Hospital and Chamberlain Associates. The defendant Hospital opposes both motions.

This action arises from an injury suffered by decedent, Harry Yarnell, while a patient at the defendant Hospital. Harry Yarnell was admitted to the Hospital on the service of defendant, Brooke Roberts, M.D., on January 18, 1970. Mr. Yarnell was referred by Dr. Roberts for radiologic studies, and on January

19, 1970, an aortagram was attempted. During this procedure, a guide wire, used in the procedure, broke off in decedent's arm, requiring its surgical removal under general anesthesia.

The motions presently before us were filed subsequent to the date of the final pretrial conference in this action. The cause of this eleventh hour activity appears to be: that the plaintiff has recently discovered that the guide wire in question was not, in fact, defective; that one, Dr. Chait, performed the actual procedure during which plaintiff was injured; that at the deposition of Dr. Chait on May 20, 1974 and thereafter plaintiff discovered that the defendant Hospital claims that the Hospital's Radiology Department is operated by an allegedly distinct legal entity by the name of Chamberlain Associates; that Dr. Chait is allegedly an employee of Chamberlain Associates and not an employee of the defendant Hospital; and that the defendant Hospital maintains that it cannot be held liable for the negligence of Dr. Chait.

Apparently, plaintiff did not learn that her expert was of the opinion that the guide wire was not defective until immediately prior to the final pretrial conference. The record of this case clearly demonstrates that the defendant Hospital, for some reason not completely clear from the record before us, assumed from the inception of the suit, that plaintiff was proceeding only on a defective wire theory. The record also demonstrates that plaintiff should have been aware of the Hospital's perception; and, more importantly, the record conclusively demonstrates that plaintiff's perception of her own case was identical to that of the Hospital. Finally, based on this record and numerous pretrial conferences, the Court's perception of this lawsuit was identical to that of the plaintiff and defendant Hospital.

The plaintiff, of course, now wishes to proceed on a claim that "[T]here was negligence in the performance of the aortagram by using excessive force in inserting and removing the wire"; and thus, the present motions.

In support of its request for an estoppel against the Hospital, plaintiff argues that defendant's answer to the complaint does not effectively deny plaintiff's averment that plaintiff was injured by the Hospital's employees or agents. She further argues that the Hospital never informed plaintiff that the Radiology Department was a separate entity from the Hospital despite numerous opportunities and numerous references to the Radiology Department in the course of discovery. Finally, in this regard, plaintiff's counsel states that he did not learn of the existence of Chamberlain Associates until May 20, 1974 at the deposition of Dr. Chait.

In support of her motion, to add Chamberlain as a new defendant, plaintiff states, in a conclusory manner, that there is a close relationship between the Hospital and Chamberlain Associates. Although this may, in fact, be true; at this time, the record before the court indicates only that the Hospital provides supplies to the department and they are in the same building. On the basis of the alleged relationship, plaintiff argues that Chamberlain Associates should be added as a defendant and estopped from raising the defense of the statute of limitations.

The Hospital argues that the record does not demonstrate that the appropriate criteria of F.R.Civ.P. 15(c) are met with regard to plaintiff's request to add Chamberlain Associates. In response to the alternative requested relief, i. e. the estoppel against the Hospital, the Hospital argues that "[d]efendant's answer did in fact deny plaintiff's allegations of agency" and that the Hospital never revealed the status of the Department of Radiology because discovery was never directed at the issue and it was not considered relevant:

"At no time prior to the preparation of the final pretrial order several

weeks ago did plaintiff indicate or direct its discovery towards a theory of malpractice based on the actions of the alleged agent of the hospital."

Prior to the resolution of the issues presented by these motions, we set out the history of the litigation in detail as it is extremely relevant to the issues presented.

## II

On August 19, 1970, the plaintiff Harry Yarnell (now deceased) filed a complaint, against the two defendants, requesting damages for injuries arising out of medical treatment.

The pertinent paragraphs of the complaint of Harry Yarnell and the answer [1] of the Hospital are set forth below.

C. ¶ 3 Defendant, Hospital of the University of Pennsylvania, is a duly licensed hospital, a legal entity, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located within said Commonwealth at 3400 Spruce Street in Philadelphia; and at all times material hereto was engaged, through its agents, servants, and employees in rendering medical care to the ill and injured.

A. ¶ 3 It is denied that the Hospital of the University is a separate legal entity. On the contrary, the same is a part of the University of Pennsylvania. The remaining averments of this paragraph are admitted except that it is denied that any care rendered to the plaintiff in this case had anything to do with his injuries, if any.

C. ¶ 5 On or about January 18, 1970, the plantiff was admitted to the defendant hospital, Hospital of the University of Pennsylvania, on the service and under the care of the defendant physician, Brooke Roberts, M. D.; and said plaintiff was then, there, and thereafter rendered care by the defendants, their agents, servants, and employees, in such a negligent and reckless manner as to cause him serious and severe injuries, including left upper extremity damage.

A. ¶ 5 It is denied that any care was rendered to the Plaintiff by answering Defendant which had any connection with any injuries which may have been sustained by the Plaintiff. It is further denied that defendant was reckless or negligent. Defendant demands proof of the remaining averments of this paragraph.

The second, third, and fourth defenses asserted by defendant in its answer are respectively as follows: plaintiff assumed the risk, defendant was not negligent, and nothing which defendant did or omitted to do could be held to have been a proximate cause of the accident.

The statute of limitations based on the incident of January 1970 ran, of course, under Pennsylvania law in January 1972.

The scenario of this lawsuit can be drawn by a recitation of the unwilling parade of third-party defendants into it. This parade began with the order of another judge of this Court on March 30, 1971 allowing the Hospital to make Franklin X-ray Corporation and United States Catheter and Instrument Corporation third-party defendants. The operative paragraph of the Hospital's third-party complaint reads as follows:

"The incident which gave rise to this action was the breaking of a metal guide wire which had been inserted in a vein in the patient's body, said guide wire having been sold to defendant Hospital of The University of Pennsylvania by the third-party defendant Franklin X-ray Corporation and sold to Franklin X-ray Corporation by third-party defendant United States Catheter and Instrument Corp."

It is clear from this motion that as of this early date in the action, the Hospital, at least in part, was defending

1. The hospital's answer was filed on October 15, 1970.

against a defective guide wire theory of liability. Up to that time, the only developments in the action were that the Hospital and the doctor had filed interrogatories to the plaintiff on December 14, 1970, and March 17, 1971 respectively. No answers to the interrogatories had been filed when the third party complaint motion was filed and approved. On July 3, 1973, this Court allowed Franklin X-ray Corporation to join Cooke Incorporated as a third-party defendant. At the time, there was some doubt as to who sold the wire to the Hospital and who manufactured it. On April 18, 1974, this Court granted the Hospital leave to join Pilling Company as a third party defendant. The motion set out the efforts to determine the source of the guide wire and indicated the investigation had led to the possibility of Pilling Company as seller and AB Stille-Werner, a Swedish company, as manufacturer. This Court allowed Pilling Company to file a third-party complaint against Stille-Werner, on September 10, 1974.

This action has been called for trial on numerous occasions and each time counsel represented that it was necessary to join another third-party defendant, and the action was continued on several occasions. The thrust of the case had always been presented as a defective guide wire. For the first time, we were informed at the final pre-trial conference, on January 28, 1975, by plaintiff's counsel that he had been told by his expert that the guide wire in fact was not defective and that plaintiff relied solely on the ground of negligence and not a defective product basis for liability.

The course of discovery in this action is interesting in light of the recent developments.

In September of 1971, United States Catheter and Instrument Corporation and Franklin X-ray Corporation filed and served interrogatories on the Hospital and Doctor Roberts. The information elicited by the answers of these defendants in October and November of that year is substantially the same. The Hospital and Dr. Roberts were not aware of anyone who had expressed an opinion that the guide wire was defective and/or unreasonably dangerous for its intended use at the time of its sale to the Hospital of the University of Pennsylvania. Both also reported that Dr. Chait of the Radiology Department at the Hospital had examined the wire after the operation. The Hospital further stated that the allegations of its third-party complaints were based on the fact that the wire was presumably handled by the doctors in the usual manner and nevertheless broke and that no one has specific information other than that as to its defective condition.

It was not until July 10, 1972, after the Hospital had filed a motion to compel, that plaintiff answered the Hospital's interrogatories; which interrogatories had been filed on December 14, 1970. The plaintiff's answers indicate she had the relevant records from the Hospital. In response to a question requesting the names of persons with knowledge of the cause of decedent's injuries, the plaintiff blithely responded that the Hospital was in a better position to have that information. With respect to the negligence or malpractice of the defendant, plaintiff stated rather generally that because of the defendant's negligence the guide wire broke off. Plaintiff stated that her experts were the Hospital and its staff. The plaintiff further stated her allegations were based on the expert opinion that it was a violation of 402(A) for the catheter to break and that the Hospital records contained the names of the experts.

The first interrogatories filed by plaintiff in this case were filed on August 28, 1972, directed to Dr. Roberts. The answers were filed on September 15, 1972, which clearly indicated that the performance of the aortagram in question during which the guide wire broke

was done by the Radiology Department at the Hospital.

Subsequently, plaintiff filed interrogatories on January 8, 1974 on the Hospital, doctor, and third party defendants. The interrogatories addressed to the third party defendants related to the guide wire in question. These interrogatories, addressed to the Hospital, are the first interrogatories plaintiff addressed thereto. The interrogatories addressed to the defendants were primarily expert witness questions and also requested identification of those who examined the guide wire. The answers again refer to Dr. Roberts, Dr. Chait, and unnamed others who may have been present at the diagnostic procedure. There is also reference to the deposition of Dr. Roberts and the Hospital medical records; however, we have not been favored with these items on the record.

The final relevant record items up to the present time are the supplemental interrogatories of the hospital to the plaintiff in January, 1974 which were answered in February of that year. The plaintiff stated that he had no expert witness as of that time and further stated that plaintiff's only knowledge of the identity of the manufacturer was based on information supplied by the hospital.

### III

Rules 8 and 15 are the relevant provisions of the Federal Rules of Civil Procedure applicable hereto.

Rule 8(b) provides, in part, that:

"A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. . . . Denials shall fairly meet the substance of the averments denied."

Rule 8(d) provides, in part, that:

"Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."

Rule 8(f) provides that:

"All pleadings shall be so construed as to do substantial justice."

Rule 15 provides, in pertinent part, as follows:

"(a) . . . [A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

.    .    .    .    .    .

"(c) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

The motions before us essentially present three different requests for relief which are all directed at the same object. The requests are all designed to assist the plaintiff in establishing an organization to which any negligence in the performance of the aortagram may be attributed.

The first issue, logically and chronologically, is whether the defendant Hospital should be deemed to have admitted agency. Each case relied on by plaintiff on this issue, and others perused by the court, discuss two basic elements. First, there is the question of whether the an-

swer to the complaint had the clear, if not calculated, effect of lulling plaintiff into a belief that the question of agency was not in issue. Second, there is the question of whether the course of discovery had the impact, at least partly as a result of the conduct of the defendant, of reinforcing plaintiff's initial misconception. Weade v. Trailways of New England Inc., 117 U.S.App.D.C., 325 F.2d 1000 (1963); ·Caulfield v. Bethlehem Steel Corporation, 195 F.Supp. 360 (E. D.Pa.1961); Zielinski v. Philadelphia Piers, 139 F.Supp. 408 (E.D.Pa.1956). In addition, such considerations are not infrequently present in requests to amend a complaint in order to add an additional defendant after the statute of limitations has run. Travelers Indemnity Co. v. United- States, 382 F.2d 103 (10th Cir. 1967); Gifford v. Wichita Falls & Southern Railway Co., 224 F.2d 374 (5th Cir. 1955), cert. den. 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787 (1955). Marino v. Gotham Chalkboard Mfg. Corp., 259 F.Supp. 953 (S.D.N.Y.1966); McSparran v. Bethlehem Minerals Company, 210 F.Supp. 21 (E.D.Pa.1962); Williams v. Pennsylvania R. Co., 91 F. Supp. 652 (D.Del.1950); Hartford Acc. & Ind. Co. v. Interstate Equip. Corp., 74 F.Supp. 791 (D.N.J.1947), appeal dismissed, 176 F.2d 419 (3d Cir. 1949), cert. den., 338 U.S. 899, 70 S.Ct. 250, 94 L.Ed. 553 (1949). Indeed, courts have been presented with, both a request for . an order deeming a defendant to have admitted agency and to add an additional defendant after the statute of limitations has run, as we have in this case. Meltzer v. Hotel Corporation of America, 25 F.R.D. 62 (N.D.Ohio 1959).

■■ The theory of Rule 8 is that a defendant's pleading should apprise the plaintiff of the allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable plaintiff to prevail. If the answer is not sufficiently definite to give reasonable notice of the allega-

tions in the complaint sought to be placed in issue, the opponents' averments may be treated as admitted. 5 Wright and Miller, Federal Practice and Procedure § 1261 (1969).

The key to this issue is paragraph 5 of the complaint and answer. Plaintiff argues that the Hospital did not deny agency. However, we must conclude that the answer of the defendant Hospital is both literally and fairly adequate.

We cannot assume that no Hospital personnel at all were present during deceased's aortagram in January, 1970. To the extent that they were, the answer denies negligence. We note the plaintiff has in his possession Hospital records which should reveal this information; and yet plaintiff has not made them part of the record for this motion. The Hospital also stated that no care was rendered to plaintiff by the answering defendant which had any connection with the injuries sustained. This seems to be adequate notice to the plaintiff that the Hospital disclaimed any responsibility for at least certain conduct; and this is especially so when read in light of the second sentence of that paragraph as outlined above.

■ It is true that the Hospital does not specify that the individual in charge of the aortagram was not an employee of the Hospital. It also appears to be true that certain of the defenses in the Hospital's answer are somewhat ambiguous in the context of this action. It is further true that the complaint provided plainer notice of a negligence claim than a defective product claim. Nevertheless, the record before us does not indicate a total lack of involvement of Hospital personnel in the procedure, even assuming the procedure was principally performed by Dr. Chait of the Radiology Department, a/k/a Chamberlain Associates. In such context, the answer and other defenses are consistent and provide plain notice of a defense of lack of negligence and lack of involvement in part. Additional clarity may have been desirable

but the answer is no less a model of precision and clarity than the complaint. Moreover, the plaintiff has never pursued, on the record, discovery to which the item of information now in dispute was relevant. If he had done so, on the basis of this record, we must assume that defense counsel for the Hospital would have forthrightly cured the misconception of the plaintiff's counsel. Defendant has not misled plaintiff.

With respect to plaintiff's motion to add Chamberlain Associates as an additional defendant, there is substantial doubt as to whether the appropriate criteria of F.R.Civ.P. 15(c) are met so that an amendment of the complaint, adding Chamberlain Associates as a defendant, may relate back. This case does not present a situation where the plaintiff has actually sued and served the correct party, the party who he intends to sue, but merely has mistakenly used the wrong name of the defendant in the caption of the complaint. In the case of such a misnomer, there is no difficulty with an amendment which cures the misnomer and relates back. Munetz v. Eaton Yale and Towne, Inc., 57 F.R.D. 476 (E.D.Pa.1973). Rather, this case requires, especially because of the theory which plaintiff has on the record pursued in discovery, a close appraisal of the three criteria set out in F.R.Civ. P. 15(c). Although plaintiff has not shown that his request is appropriate at this time, there is certainly sufficient cause on the present record to conclude that plaintiff's claim is not frivolous. Consequently, we believe it preferable to allow service of an amended complaint without prejudice to Chamberlain Associates' right to raise the statute of limitations as a defense. In that posture, we can decide the issue of whether such amendment should relate back when the parties to whom the issue is of primary concern are before the court. Cf. Bravman v. Bassett Furniture Industries, Inc., 64 F.R.D. 7 (E.D.Pa., 1974).

Unfortunately, plaintiff has not attached a proposed amended complaint to its motion. We will only allow plaintiff to file an amended complaint on Chamberlain Associates which is identical to the original complaint in all respects except that Chamberlain Associates is named as a party defendant. We order plaintiff's counsel to file and serve such a complaint and summons within five (5) days of the date of this order.

We also grant plaintiff's motion for production of documents, in light of the fact that some delay will necessarily be occasioned by the Court's decision above.

Underlying all the issues thus far considered and to be considered is the fact that, the record indicates that, all through discovery and up to the present time, plaintiff has proceeded on a defective wire theory. For the sake of clarity, we note that we have not decided any effect of that fact other than as relevant to the present motions as discussed above.