James W. **MARTZ, Jr.,** Plaintiff,

v.

**MILLER BROTHERS COMPANY,** a corporation of the State of Delaware, Defendant.

**Civ. A. No. 2647.**

United States District Court
D. Delaware.

July 30, 1965.

John M. Bader, of Bader & Biggs, Wilmington, Del., for plaintiff.

Albert L. Simon, Wilmington, Del., for defendant.

CALEB M. WRIGHT, Chief Judge.

There are two motions before the court: one is plaintiff's motion seeking leave to amend his complaint and the other is defendant's motion for summary judgment. The facts which give rise to these two motions will be set out at some length because, although one single determination is the key to both motions, courts have arrived at conflicting answers based upon slight variations in facts.

On April 7, 1961, James W. Martz, Jr., suffered injuries when some cement and ceiling material fell while he was passing on a sidewalk adjacent to Miller Brothers' furniture store in Newark, Dela-

ware. Almost two years later, on April 5, 1963, Martz filed a complaint in this court in which he sought damages against Miller Brothers Company. This complaint alleged that on the day of the accident the named defendant was in possession and control of store premises located on Main Street in Newark.[1] The complaint was filed just two days before the statute of limitations ran on plaintiff's claim,[2] and service of process was not effected until April 10, 1963, several days after the tolling of the statute. Indeed, plaintiff's attorney apparently had to act with some haste in order to commence this action in time because he was not apprised of the claim until a few days before the filing of the complaint.[3]

On April 29, 1963 defendant moved for summary judgment on the ground that it did not own or operate the Newark store. Subsequently, an affidavit was filed in which Bruno E. dePolo, secretary of the defendant, stated on information and belief that the premises upon which plaintiff was injured were owned by Miller Brothers Company of Newark, a corporation separate and distinct from Miller Brothers Company.

There followed a period in which plaintiff's attorney sought through interrogatories and depositions to establish the true ownership of the Newark store. He found that the Newark store was, indeed, operated by Miller Brothers Company of Newark which was a separate corporation from Miller Brothers Company which operated a furniture store in Wilmington. He also discovered that the two stores had the same officers with the exception of the secretary. The secretary of Miller Brothers Company was dePolo and the secretary of Miller Brothers Company of Newark was Richard Miller. It was dePolo who was served with the summons and complaint in this action.[4]

The result of the discovery was a motion by plaintiff seeking leave to amend his complaint to name Miller Brothers Company of Newark as defendant. This motion was filed December 1, 1964.

The two motions before the court—the motion for summary judgment and the motion for leave to amend—turn on one central question: whether the court will permit an amendment to the name of the defendant *which relates back to the time of the original complaint.* If the court were to find that the wrong corporation had indeed been named and refuse to permit an amendment, the statute of limitations will have run on plaintiff's claim. Thus, by determining whether or not plaintiff is entitled to an amendment which relates back to the time he filed his original complaint, the court will effectively protect or foreclose plaintiff's claim.[5]

The federal rules provide for amendments to the complaint which relate back to the time of filing:

"Rule 15. (a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10

---

1. Complaint, ¶ 3.

2. 10 Del.C. § 8118.

3. See Reporter's Notes of Hearing of April 22, 1965.

4. See Marshal's Return of Service.

5. The question can be looked at in two contexts: (1) whether the expiration of the limitation period precludes substitution or (2) whether, substitution having taken place, the statute of limitations is available as a defense. Annot., "Change in Party After Statute of Limitations Has Run, 8 A.L.R.2d 6, 12 (1949).

days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

\* \* \* \* \* \*

"(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." 15(a), (c), F.R.Civ.P.

While an amendment may be made to correct a mistake in the name of a party, a new party may not be brought into an action once the statute of limitations has run because such an amendment amounts to a new and independent cause of action. Messelt v. Security Storage Co., 14 F. R.D. 507 (D.Del.1953); Slater v. Keleket X-Ray Corp., 172 F.Supp. 715 (D.D.C. 1959); Godfrey v. Eastern Gas & Fuel Associates, 71 F.Supp. 175 (D.Mass. 1947); 1A Barron & Holtzoff, Federal Practice and Procedure § 448 (Wright Ed. 1960). Because of this rule courts have come to analyze cases in which it is sought to substitute a party defendant in terms of "misnomer". If the amendment merely corrects a misdescription of the party intended to be sued for the purpose of proper identification, a misnomer is set to right. If, on the other hand, the amendment in effect brings in a new party, a new cause of action results and the amendment cannot relate back to the original complaint.[6]

Unfortunately, the fruits of analysis in these terms have not been entirely satisfactory. "Even in theory the distinction between an amendment changing or correcting such mistakes in the names of the parties and an amendment aiming at the substitution of parties plaintiff or defendant is not free from difficulty, but in actual practice the line between the two types of amendments can hardly be drawn accurately. Hence, it is not surprising to find that some courts have described as the correction of a clerical mistake or misnomer that which is regarded by other courts as a substitution of parties." Annot., "Change in Party After Statute of Limitations Has Run", 8 A.L.R.2d 6, 16 (1949).[7]

■ With an eye to the facts in this case, fully aware that leave to amend "shall be freely given where justice so requires",[8] this court has extensively examined cases from this jurisdiction and others. At the threshold a vexing question is met, i. e., is this matter one of substance or procedure? If the matter be one of substance, the court must, of course, follow the Delaware decisions. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). These decisions have followed a strict line refusing to permit amendments to relate back to the original pleading.[9]

---

6. Analysis in this fashion is nothing new. "The power to amend in case of a misnomer depends not upon the question whether the amendment changes the name, but whether or not it changes the party. If it only cures a mistake in the name of the party by or against whom the suit is prosecuted, it may be made; but if it introduces a different party, it is inadmissible." 1 Encl. of Pl. & Pr. 535, cited in Hernan v. American Bridge Co., 167 F. 930, 937 (6 Cir. 1909).

7. See also 3 Moore's Federal Practice ¶ 15.15 [4–1] (Citing cases) and 1A Barron & Holtzoff, Federal Practice and Procedure §§ 448, 451 text and 1964 pocket part (Wright Ed.1960). (Citing cases.)

8. Rule 15(a) F.R.Civ.P. See in this regard Judge Parker in United States v.

A. H. Fischer Lumber Co., 162 F.2d 872, 873 (4 Cir. 1947): "A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else."

9. This despite the fact that the Delaware rules of civil procedure are modeled after the federal rules and Civil Rule 15, Del. C.Ann. also provides that leave to amend shall be "freely given" where justice requires.

Hackett v. Bethlehem Steel Co., 5 W.W. Harr. 317, 165 A. 332 (1933); Food Fair Stores Corporation v. Vari, 191 A.2d 257 (Sup.Ct.Del.1963); Matthews v. Food Fair Stores Corporation, (Sup.Ct.Del. 1965).

In the Hackett case, the Superior Court refused to permit a change from "Bethlehem Steel Company, a corporation of the State of Pennsylvania" to "Bethlehem Steel Company, a corporation of the State of Delaware." The court said, "Without further discussing the authorities we feel warranted in saying that under the law as heretofore declared by this Court, the State of incorporation cannot be regarded as descriptive only, and that a substitution of the words in the title, of 'State of Delaware' for 'State of Pennsylvania,' would make a change in the party defendant." Hackett v. Bethlehem Steel Co., 5 W.W.Harr. 317, 322, 165 A. 332, 334 (1933).

In the first Food Fair case, the Delaware Supreme Court affirmed a decision of the Superior Court, refusing to allow a change of name from "Food Fair Stores Corporation" to "Food Fair Stores, New Castle, Inc.", despite the fact that it appeared that both corporations had the same resident agent in Delaware, offices located at the same address in Philadelphia, and at least two officers of each corporation who were also officers of the other.

It is important to note, however, that the Food Fair court found that plaintiff's counsel was informed prior to the expiration of the period of limitations that the wrong defendant had been named. The court said: "We think, however, that the present Civil Rules are not intended to permit a party and his counsel to proceed with laxity and excuse that laxity by an appeal to the court's sense of fair play."

Food Fair Stores Corporation v. Vari, 191 A.2d 257, 259 (Sup.Ct.Del.1963).

If, on the other hand, the question is one of procedure, the court may depart from the strict Delaware rule, should it see fit to do so.

It is far from clear whether, in a diversity action, a federal court is bound by the state rule on the question of relation back of amendments to pleadings. The cases are in conflict. The majority hold that the state law need not be followed. See Wright, Federal Courts, p. 240 (citing cases at note 25).[10]

■ This court is in agreement with the majority point of view. As Professor Wright has pointed out: "Application of Rule 15(c) maintains the uniformity of practice in federal courts and fosters the federal policy of deciding cases on their merits, regardless of procedural errors, while the objective of state statutes of limitation, to protect persons from the necessity of defending stale claims, is served since the amendment will not relate back unless the original pleading has given fair notice to the adverse party that a claim is being asserted against him from some particular transaction or occurrence."[11]

With the facts thus rehearsed and the question of procedure versus substance determined, we turn to the merits of this litigation.

In the past, courts which have permitted relation back of amendments to the denomination of parties defendant after the running of the statute of limitations appear to have proceeded on one or more of three theories: (1) that neglect of the plaintiff or his attorney in suing the wrong party was excusable,[12] (2) that defendant had misled plaintiff or "lulled" him into the feeling that he had sued

---

10. See also Aarhus v. Oliefabrik A/S v. A. O. Smith Corp., 22 F.R.D. 33, 35 (E. D.Wis.1958) collecting cases pro and con at note 1. The Aarhus court, itself, said, "it seems clear that now federal law and construction should apply."

11. Wright, Federal Courts, pp. 240–241.

12. See e.g., McDonald v. Chrysler Motors Corporation, 27 F.R.D. 442 (W.D.Pa. 1961) (attorney in hospital when answer filed); see also 3 Moore's Federal Practice, ¶ 15.08 [5], 15.15 [4–1] (citing cases).

the right defendant when he had not,[13] or (3) that the party actually sued and the party whom plaintiff meant to sue had sufficient "identity of interest"[14] or were so closely connected that notice to one should suffice to inform the other of a pending claim for relief. This last category contains several subcategories. Courts have found different reasons for sufficient identity of interest to allow substitution of one party for the other to relate back. In some instances the connection is found in the form of a business enterprise; for example, where individual partners were sued, a later amendment to sue the partnership was allowed to relate back,[15] and a partnership has been substituted for a corporate defendant.[16] In other instances the connection has been arrived at in terms of agency. Persons served with process have been found to hold a position of trust in both the corporation or business enterprise sued and the one intended to be sued and courts have held service on the one sufficient to permit an amendment to relate back on the theory that the intended defendant received adequate notice through its agent.[17] Indeed, some courts have said that service on a wrongly-named corporation was actually service on the intended corporation although two separate, viable corporate entities existed: "the right party—that is, the party intended by the plaintiff, though wrongly designated in the writ, was served; that party was not misled, but

all along understood that it was intended." Dress v. Schuylkill Railway Company, 83 Pa.Super. 149, 153 (1924).

Other courts, however, have steadfastly refused to look beyond the existence of distinct corporate entities. In a recent case, the Texas Court of Civil Appeals refused to substitute "Epps Super Market No. 2, Inc." for "Epps Super Market, Inc." despite the fact that both corporations had the same officers and legal counsel. The court said:

> "It is our opinion that appellant having first sued an existing corporation cannot dismiss as to such corporation and sue another separate and distinct corporation without, as to such latter corporation, be [sic] deemed as having instituted a new suit and subjecting himself to all defenses, including limitations, available to such corporation." Krenek v. Epps Super Market No. 2, Inc., 377 S.W.2d 753, 756 (Ct.Civ.App. Tex. 1964).[18]

In the case before the court some element of each rationale for permitting relation back of amendments—excusable neglect, misleading by defendant, and adequate notice due to close relationship has been raised.

 It has been implied that the attorney for the plaintiff did not have sufficient time to ascertain the correct defendant. We are told that the case was presented to him only a few days be-

13. See Williams v. Pennsylvania Railroad Co., 91 F.Supp. 652 (D.Del.1950); Hernan v. American Bridge Co., 167 F. 930 (6 Cir. 1909); Hartford Accident & Indemnity Co. v. Interstate Equipment Corporation, 74 F.Supp. 791 (D.N.J.1947). At times these cases proceed on an estoppel theory; in other instances they are more concerned with the proper defendant's notice before the expiration of the statute of limitations which permitted him to somehow cause the plaintiff to be misled.

14. 3 Moore's Federal Practice, ¶ 15.15 [4–1].

15. Taormina Corporation v. Escobedo, 254 F.2d 171 (5 Cir. 1958) cert. den. 358 U. S. 827, 79 S.Ct. 44, 3 L.Ed.2d 66 (1958).

16. Adams v. Beland Realty Corp., 187 F. Supp. 680 (E.D.N.Y.1960).

17. Nelson v. Glenwood Hills Hospitals, Inc., 240 Minn. 505, 62 N.W.2d 73 (1953); Godfrey v. Eastern Gas & Fuel Associates, 71 F.Supp. 175 (D.Mass. 1947).

18. See also Schaffner v. B. & W. Auto Sales Co., 321 Ill.App. 632, 53 N.E.2d 318 (1944); Markey v. Robert Hall Clothes of Paterson, Inc., 27 N.J.Super. 417, 99 A.2d 552 (1953); McSparren v. Bethlehem Minerals Co., 210 F.Supp. 21 (E.D. Pa.1962).

fore the statute of limitations expired on his client's claim. However, there is no assertion that plaintiff's attorney relied on any official record or consulted any authority other than his own knowledge in deciding upon which defendant to sue. There is no indication that he contacted the Secretary of State or looked at Dun and Bradstreet or took any other step to buttress the conclusion of his own experience. While there is no obligation on the part of defendant or its attorney to inform a plaintiff of his mistake in suing the wrong party, "one in the position of plaintiff's attorney must be diligent in ferreting out the proper parties defendant before suit, * * *." Hartford Accident & Indemity Co. v. Interstate Equipment Corporation, 74 F.Supp. 791, 794 (D.N.J.1947). The court is not aware of what a diligent search on the part of plaintiff's counsel would have uncovered. But there is no assertion that any search whatever was undertaken. Nonetheless, given such short time to prepare, the court cannot hold that inadequate preparation must lead to a finding that counsel was negligent. Since counsel cannot be held negligent, the question of the excusability of his negligence can have no bearing here.

Plaintiff's attorney also asserts that he was misled into naming the wrong defendant. He points to such things as joint advertising by the Newark and Wilmington stores and joint telephone listings to establish this argument.[19] However, in the majority of cases where courts have found that a defendant had misled an erstwhile plaintiff, the misleading acts have come after suit was commenced and have been motivated by the suit. This factor loomed large in one case decided by this court.

In Williams v. Pennsylvania R. Co., 91 F.Supp. 652 (D.Del.1950) plaintiff brought suit against "E. J. Lavino and Company" which plaintiff alleged to have operated a stevedore company engaged in loading and unloading ships at the Marine Terminal, Wilmington, Delaware. In fact, plaintiff had sued the wrong defendant. The stevedore company which he intended to sue was "Lavino Shipping Company", a separate corporation.

Judge Rodney noted that it was not seriously questioned that the officers of Lavino Shipping Company, who were "largely identical" with those of the corporation sued, received notice of the suit.

E. J. Lavino and Company, the wrong defendant, appeared and filed its answer. It denied the allegations of the complaint, denied liability in general and set up the defense of contributory negligence. Later, plaintiff amended his complaint to set up against defendants a claim based on "res ipsa loquitur". E. J. Lavino and Company and other defendants moved for judgment on that part of the amended complaint and after argument the court ruled in favor of the defendants.

Not until after the statute of limitations had run on plaintiff's claim did he propose to amend his complaint to bring in the proper defendant. Plaintiff maintained that he knew of only one Lavino corporation and that he was lulled into a false sense of security by the nature of Lavino's pleadings.

Under these circumstances Judge Rodney said:

"It is asserted and not denied that the officers of Lavino Shipping Company knew of the plaintiff's possible claim against it from the first. Service of summons was upon the resident agent, which was the resident agent of both corporations alike, and the corporate officers and the representatives of the corporations were aware of the plaintiff's mistake in naming E. J. Lavino and Company as a defendant. Despite this knowledge, E. J. Lavino and Company filed an answer not only

---

19. One court apparently did give at least passing consideration to this argument, although its decision is based on principles of agency and a finding that the intended defendant had actual notice of plaintiff's claim. Nelson v. Glenwood Hills Hospitals, Inc., 240 Minn. 505, 62 N.W.2d 73 (1953).

denying liability, but also asserting the affirmative defense of contributory negligence. It also participated in further preliminary proceedings with which, as a complete stranger to the incident which gave rise to the plaintiff's claim, it could have had no concern. Under these circumstances, I am of the opinion that the stevedoring corporation, Lavino Shipping Company, which the plaintiff intended to sue, is in fact before the court, and that the effect of the proposed amendment is merely to correct a misnomer.

\* \* \* \* \* \*

"It seems entirely clear to me that the mistake being known and the two companies having the same president and substantially the same officers, the Lavino Shipping Company actually sanctioned all the court proceedings by E. J. Lavino and Company whereby the mistake was concealed until the statute of limitations had run and now alone seeks to obtain the benefit of its action." Williams v. Pennsylvania R. Co., 91 F. Supp. 652, 654–655 (D.Del.1950).

Other factors played a role in the Lavino decision. Certainly, the court was influenced by the fact that the intended defendant had notice of the plaintiff's claim from the outset. Important to this action, however, is the fact that the misleading acts of defendant to which Judge Rodney pointed occurred after plaintiff brought his suit and were part and parcel of that action.[20]

Finally, plaintiff maintains that the two corporations involved in this suit are so closely linked to one another that the service of his complaint upon Miller Brothers Company was, in effect, service upon Miller Brothers Company of New-

ark. It is this category, the category of identity of interest between parties with the attendant agency concept, in which the courts have most frequently granted relief to an erring plaintiff and permitted correction of "misnomers". The rationale for this approach is that the close relation between the party actually sued and the one intended assures that the intended defendant received notice of the plaintiff's claim and was not misled by the error.

"To hold otherwise would be unfair to the plaintiff and would allow the defendant to avoid its rightful obligation through a technical error on the part of plaintiff's counsel, in a situation where it has had notice of the plaintiff's claim from the outset. As was stated by Mr. Justice Holmes in New York Central & Hudson River Railroad Co. v. Kinney, 260 U. S. 340, 346, 43 S.Ct. 122, 123, 67 L.Ed. 294: 'but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied.'" Godfrey v. Eastern Gas & Fuel Associates, 71 F.Supp. 175, 178 (D. Mass.1947).

A procedure for determining when amendments to pleadings shall relate back based on notice to the intended defendant is the aim of Rule 15(c). A proposed amendment to the rule makes the notice feature more explicit:

"(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or at-

---

**20.** See also with regard to misleading actions by defendant, other cases cited at footnote 14, supra.

It is interesting to note that in Food Fair Stores Corporation v. Vari, 191 A. 2d 257, 259 (Sup.Ct.Del.1963) the Supreme Court of Delaware distinguished Williams on the basis that the Williams

decision rested on the misleading acts of defendant. This position gains support from the fact that Judge Rodney believed that the Delaware Courts would follow his decision in a similar fact situation citing for that belief Hernan v. American Bridge Co., 167 F. 930 (6 Cir. 1909), a case in which plaintiff had been misled.

tempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. [An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he would not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.]" (New matter in brackets.) Preliminary Draft of Proposed Amendments to Rules of Civil Procedure, March 1964, p. 76.

Even if the law were as proposed, however, plaintiff's position would not be advanced. As is the case in Delaware, statutes of limitations are frequently geared to the filing of a complaint. The proposed amendment to Rule 15(c) is geared to notice. The rule provides that the party to be substituted must receive notice of the action "within the period provided by law for commencing the action against him." Given the facts in this case, it is apparent that Miller Brothers Company of Newark had no notice until after the statute of limitations had run. One cannot have notice that a suit has been brought against him until he hears of it. Even if dePolo were found to be an agent of Miller Brothers Company of Newark, the fact remains that he had no notice of this suit until April 10, 1963, three days after the statute of limitations had run.

Thus, in this instance, under the proposed rule, we have the anomalous result that service on dePolo as an agent of Miller Brothers Company would properly commence a law suit although service on dePolo as an agent of Miller Brothers Company of Newark (should he be found to be an agent) would not.[21]

The court has found no element of excusable neglect on the part of plaintiff's attorney which would permit an amendment to the complaint to relate back to the filing of this action. Nor can plaintiff be said to have been misled by acts of the defendant.

■ Thus, the court is left but one theory by which plaintiff may be granted relief—identity of interest. Under the facts of this case there are two possible avenues of approach. For one, the court could find dePolo the agent of Miller Brothers Company of Newark and hold service of the complaint on him sufficient to bring that corporation into court. But this position is untenable. DePolo was not an officer of Miller Brothers Company of Newark. He was not even a shareholder in that company. While cases are numerous in which courts have allowed service on an individual in one capacity to stand for service on him in a different capacity, there is no rational basis for such a result where the one served has no dual capacity. The court has searched in vain for a case holding sufficient service upon one not connected in any official capacity with the defendant to be sued.

The court is impressed with the reasoning that because of the business connection of the Miller Brothers stores, Miller Brothers Company of Newark was likely to hear of the claim against it. We are not blind to the fact that on reading

---

**21.** Query whether this inconsistency in the proposed Rule 15(c) would not frequently defeat the purposes which the change was intended to serve.

Perhaps the anomalous result pointed up here could be righted if the words "and serving him with notice of the action" could be added to the proposed rule after "within the period provided by law for commencing the action against him. * * *" This would not change the theory of notice to which the rule should equitably be attuned. However, it would avoid results such as that above illustrated where rules of court provide for prompt service of process. See e.g., Rule 4 F.R.Civ.P.; Superior Court Rules, Civil Rule 4(a), Del.C.Ann.

the summons and complaint dePolo should have been aware of the import of the claim. Further, it is reasonable to assume that dePolo informed the proper parties of Martz's claim and of his mistake in bringing suit.[22]

But the court cannot act on surmise or on its own investigations to determine adequacy of service. In providing for service of process upon corporations, Rule 4(d) (3) F.R.Civ.P. sets out certain parties who are authorized to receive service. These parties are chosen because the capacity in which they serve gives reasonable assurance that the corporation will receive notice of the claim against it. But the rule does not go on to say that service is also good on anyone else who is *likely* to notify the corporation or who investigation shows did inform the corporation. Absent some recognized capacity in which to act, some connection cognizable in law, dePolo cannot be held the agent of Miller Brothers Company of Newark for purposes of service of process.

Nor can the court accept the second alternative presented, the argument that the two corporations are so closely linked that service on one is equal to service on the other. This argument requires that the two stores be regarded simply as enterprises of the Miller family.[23] The court could then say that an employee of either store was ultimately beholden to the family and find service on dePolo sufficient to notify the family—hence any or all of its corporate extensions.

But such a piercing of the corporate veil does violence to the facts here. The officers of both corporations overlap, but they are not the same in each case. While the shareholders of each corporation are Millers, they are not always the same Millers. Nor is there evidence that where the same shareholders do participate in each company, their proportion of ownership in each is identical. Thus, one cannot say that any recovery to Martz would "come out of the same pocket." Finally, on a more conceptual level, the corporations exist under Delaware law as distinct entities with all the immunities that the Delaware corporation law extends to separate corporations.

In concluding his opinion in the Williams case, Judge Rodney wrote:

"I conclude that it is in the interest of justice that the present motion be granted. It is clear that it is becoming increasingly the policy of the law to determine the claims of litigants upon their merits and to disregard technicalities, as far as possible. The conclusion reached in this case is believed to be in harmony with that policy." Williams v. Pennsylvania R. Co., 91 F.Supp. 652, 657 (D.Del.1950).

Unfortunately, this decision is not in harmony with the salutary policy which Judge Rodney followed. But this court will not be the first—or the last—to express reluctance in making a decision which is unavoidable.[24]

Miller Brothers Company of Newark was not served with process before the running of the statute of limitations. Even if a decision for plaintiff could be founded on effective notice to the defendant he sought to sue, Miller Brothers Company of Newark had no notice of plaintiff's claim within the period of limitations or within that period plus the time required for service of the summons and complaint.

22. The court questioned counsel for defendant on this point. He undertook to ascertain when some officer of Miller Brothers Company of Newark was first apprised of Martz's claim. By letter dated June 9, 1965, he informed the court that dePolo told Nathan Miller, President of Miller Brothers Company of Newark, of the claim several days after service of the complaint.

23. The stockholders of Miller Brothers Company are Howard Miller and Richard Miller (brothers). The stockholders of Miller Brothers Company of Newark are Howard Miller, Richard Miller and Nathan Miller (father).

24. See e.g., Judge Feinberg's remarks in Battaglia v. United States, 199 F.Supp. 834, 836 (S.D.N.Y.1961).

The fact that plaintiff missed the mark narrowly, that service on any officer of Miller Brothers Company other than de-Polo would have also been service on an officer of Miller Brothers Company of Newark and that an officer of Miller Brothers Company of Newark did have notice shortly after dePolo was served,[25] causes the court concern. But statutes of limitations are not approximate goals to be aimed at. They cannot be extended willy-nilly by the court as it might extend the time for a brief to be filed. They are rules of law. The court cannot substitute its own assumptions, or notions of fair play, or reluctance to see controversies decided upon technicalities, for the clear mandate of the law.

Defendant's motion for summary judgment will be granted. Plaintiff's motion for leave to amend his complaint will be denied.

Present order.

---

25. See footnote 22, supra.