**Kenneth W. WILHELM, Plaintiff,**

v.

**The GLOBE SOLVENT COMPANY, The George Senn Company, American Mineral Spirits Company, Union Oil Company of California, Globe Solvent Supply Company, Inc., AMSCO, a division of Union Oil Company of California, National Solvents, Inc., and Exxon Company, U. S. A., Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted Dec. 2, 1976.

Decided March 17, 1977.

---

Paul H. Spiller, Kimmel, Spiller & Bradley, Wilmington, for plaintiff.

Mason E. Turner, Jr., Wilmington, for Globe Solvent Co., George Senn Co. and Globe Solvent Supply Co., Inc.

B. Wilson Redfearn, Wilmington, for Union Oil of California and American Mineral Spirits Co.

Thomas Herlihy, III, Herlihy & Herlihy, Wilmington, for Exxon Co.

## OPINION

TEASE, Judge.

Plaintiff, Wilhelm, an employee of a dry cleaning plant, seeks to hold the manufacturers and distributors of a cleaning solvent liable for injuries he received while working

with the solvent at the place of his employment.

While the facts as to how the accident happened are in dispute, the facts as they appear most favorable to the plaintiff are as follows: On March 1, 1973, Wilhelm was working in the dry cleaning area of the plant loading and unloading clothes from the dry cleaning machines. While so engaged he wore a terry cloth towel about his waist to protect his clothing from the solvent that dripped off the articles as they were being removed from the dry cleaning machines.

In addition to those duties, plaintiff was also assisting another employee, Parker, in the next room where clothes were examined for spots. In order for the plaintiff to take clothes into and out of the dry cleaning area he had to pass in close proximity to Parker. On one of his trips back to the dry cleaning area, as he passed Parker (who was smoking a cigarette), the terry cloth towel about Wilhelm's waist caught fire and he was seriously burned. Plaintiff believes that the towel, saturated with cleaning solvent known as Stoddard's Solvent, ("the solvent") was ignited by Parker's cigarette.

At the time of the accident Custom Cleaners, Inc. a/k/a Sparkle Cleaners, where plaintiff was employed, was using solvent that had been delivered by two different distributors.

These distributors were Globe Solvent Supply Co., Inc. and National Solvents, Inc. The solvent delivered to the consumer by Globe was manufactured and distributed at the wholesale level by Union Oil Company of California through a corporate division known as AMSCO, Inc. The solvent delivered by National was manufactured and distributed at the wholesale level by Exxon Company, U.S.A.

Records show that Globe's last delivery to Sparkle before the accident was on February 2, 1973, and National's last delivery before the accident was on February 26, 1973. Since Sparkle Cleaners had a supply, on February 26, of the solvent delivered by Globe, that solvent would have been combined with the solvent delivered by National. Hence, the naming of the Globe/Union group as defendants along with the National/Exxon group.

The product was delivered by tank trucks, stored in drums and there were no warnings of its flammability supplied by the manufacturers or distributors. However, there were some "no smoking" signs in the work area of the plant. In addition, both Wilhelm and Parker had been told not to smoke around Stoddard's Solvent, both had been warned by their employer that the solvent was flammable, and both their depositions show that they knew the solvent was flammable.

The plaintiff's employer, Pincus Wexler, who had been in the dry cleaning business for forty years, testified that the flammable properties of Stoddard Solvent are well known in the industry.

Plaintiff had tests run by an expert that showed that the normal flash point, the temperature of the air when the solvent's fumes will ignite almost immediately if brought into contact with an open flame, was over 100°F. The air temperature at the time of the accident was probably between 70°F–85°F. Cook, plaintiff's expert, suggested that for the towel to ignite the way it did the solvent contained impurities that lowered the flash point.

On these facts plaintiff has brought suit claiming (1) failure of adequate warning of flammability and (2) defective manufacture of the solvent.

Plaintiff bases his claims on three theories of liability: (1) strict liability in tort, (2) negligence, and (3) breach of implied warranties of merchantability and fitness for purpose.

*Defendant Exxon's Motion to Dismiss*

■ Exxon, brought into the suit by plaintiff's third amended complaint, moves for dismissal on the grounds that the action against it is barred by the statute of limitations.

There is no question that the third amended complaint was filed after the stat-

ute of limitations had run. Rather, the question presented is whether Superior Court Rule 15(c) is applicable. If it is applicable, the third amended complaint would relate back to the date of the original complaint; otherwise the action is barred by the statute of limitations.

Before Rule 15(c) can rescue a claim there are three requirements that must be met. The first test is whether the claim asserted against Exxon arises out of the occurrence set forth in the original complaint. The first requirement is clearly met.

The second problem is whether Exxon received, before the statute of limitations ran, such notice of the institution of the action that it would not be prejudiced in maintaining its defense on the merits. The letter sent by plaintiff's counsel to Exxon on February 24, 1975, is not sufficient "notice of the institution of the action" to satisfy that requirement of Rule 15(c). The letter sent to many different manufacturers of the solvent cannot serve to put any of them on notice that an action had been instituted against them or some entity closely akin to them. The rule never intended this approach to the problem encountered by a plaintiff who has a claim against one of a large class of persons and at that time has no knowledge of whom he wishes to sue. Such a result would effectively nullify all limitations of actions in a large group of cases. *Munetz v. Eaton Yale and Towne, Inc.*, E.D.Pa., 57 F.R.D. 476 (1973).

Thirdly, did Exxon know, or should it have known, that but for a mistake in identity of the proper party the action would have been brought against it? Under this requirement Exxon would have had to know, before the statute of limitations expired, that it was the proper defendant in this action. Clearly there is no evidence to support such a contention and the action must be dismissed as to Exxon for the same reasons as set out above, with respect to the second requirement of Rule 15(c). There was no misnomer of Exxon within the period when suit could have been filed.

*Defendant Globe Solvent Supply Co., Inc.'s Motion to Dismiss*

■ Globe Solvent Supply Co., brought into this suit by the plaintiff's second amended complaint, moves for dismissal on the grounds that that complaint is barred by the statute of limitations.

While there is no doubt that the second amended complaint was filed after the statute of limitations had expired, Rule 15(c) is satisfied here and thus the amendment relates back to February 26, 1975, the date of the original complaint.

Using the test set out in the Exxon portion of this opinion, and construing the facts as they appear most favorable to plaintiff, it is plain that this is the type of problem Rule 15(c) was designed to solve in favor of a moving party.

First, it is obvious that the claim in the amended complaint arose from the same occurrence as set forth in the original complaint. The second and third requirements, that of notice of the institution of the action and that Globe Solvent Supply knew or should have known that, but for a mistake in identity, the suit would have been brought against it, are met twofold. They were met first by service of process upon the agent of both Globe Solvent and Globe Solvent Supply and second by the conversation between plaintiff's attorney and the secretary of both corporations. The affidavit of Mr. Spiller shows that during the conversation Mr. Levy was informed of the accident and that suit was being instituted against Globe Solvent Co. and George Senn Co. (the name Globe Solvent Co. took after reorganizing sometime after the accident). Mr. Levy, as secretary to both the served party and the party intended to be served, was in a position to know that the Globe Solvent Co. did not distribute Stoddard's Solvent and Globe Solvent Supply Co. did. Therefore, it must be conclusively presumed that he knew, at the time of the conversation, that but for a mistake as to Globe Solvent Supply's identity, the action would have been brought against that company rather than its sister corporation.

Defendant relies heavily on *Martz v. Miller Bros. Co.*, D.C.Del. (1965) 244 F.Supp. 246. However, this case is distinguishable from *Martz* in two important areas. In *Martz*, while there was an identity of interest between the party served and the party intended to be served (they were brother-sister corporations also), the plaintiff served someone who was not an agent of the one he meant to sue. The court held that service on one who was not an agent of the party that plaintiff was trying to sue would not be effective to give notice to the intended party. While there was only informal notice in this case, the logical corollary to the above holding would be that notice to one who is an agent for both parties will be notice to the intended party.

The second distinction is that in *Martz* there was a delay in service so that neither the named party nor the intended party had notice of the action within the statutory period. Here, while it appears that there was also a delay in service, the intended party had notice of the suit by way of the conversation between plaintiff's attorney and Mr. Levy.

For all the above reasons the motion to dismiss Globe Solvent Supply Co., Inc. must be denied.

### All Defendants' Motions for Summary Judgment

#### A. Strict Liability in Tort

Plaintiff seeks to hold the manufacturers and distributors of the solvent strictly liable for the failure to adequately warn of its flammability. In addition, plaintiff seeks to hold the manufacturers strictly liable for defectively manufacturing the solvent.

■ Notwithstanding plaintiff's claims as to the scope of *Martin v. Ryder Truck Rental, Inc.*, Del.Supr., 353 A.2d 581 (1976), the doctrine of strict liability in tort is not applicable in the State of Delaware when the plaintiff is covered by the warranties of fitness for purpose and/or merchantability in *6 Del.C., Sections 2–314, 2–315, 2–318.*

Indeed, it is clear that the court in *Martin* did not intend the broad interpretation that

plaintiff argues for. The court in footnote 7 expressly stated that they reserved the question of the applicability of strict liability to direct sales situations to another day. The *Martin* case dealt with a bailor/bailee relationship not covered by the U.C.C. Therefore, they held that since the legislature had not preempted the field, the court was free to apply the doctrine of strict liability. The logical corollary is that had the field been so preempted the court would not have been able to apply the doctrine. It is my opinion that the legislature preempted the field as to direct sale relationships when it adopted the U.C.C.

Delaware courts have on numerous occasions ruled that the field has been preempted by the legislature. *Moore v. Douglas Aircraft Co.*, Del.Super. 282 A.2d 625; *Handy v. Uniroyal, Inc.*, D.C., 327 F.Supp. 596. In a concurring opinion in the case of *Markle v. Mulholland's, Inc.*, 265 Or. 259, 509 P.2d 529, Chief Justice O'Connell, of the Oregon Supreme Court, put it best when he said:

> "A careful reading of the Uniform Commercial Code reveals that it prescribes a legal framework for the recovery of damages for personal injuries resulting from defective products. Recovery for personal injuries resulting from the negligent conduct of the seller is left for the courts to develop. But it is apparent that aside from negligence cases the Code provides an integrated and comprehensive scheme under which recovery for personal injuries may be sought by both privity and non-privity plaintiffs."

#### B. Negligence and Breach of Implied Warranties

##### (1) Failure to Warn

■ Because these theories are based on the same contentions they will be discussed together. First, plaintiff claims that the defendants were negligent for failing to adequately warn him of the dangerous propensities of Stoddard's Solvent and such failure constituted a defect that breached the implied warranties of merchantability

and fitness for purpose. It is well established that a product, although virtually faultless in design, material, and workmanship, may nevertheless be deemed defective where the manufacturer (and here distributor) fails to discharge a duty to warn. *63 Am.Jur.2d, Products Liability, Section 42,* says that this duty to warn arises when a manufacturer or seller of a product which, to his actual or constructive knowledge, involves danger to users, places the product on the market. However, the court in *Burton v. L. O. Smith Foundry Products Co.,* 529 F.2d 108 (7 Cir. 1976) stated that the duty to warn exists only when those to whom the warnings would go can reasonably be assumed to be ignorant of the facts which a warning would communicate. Further, *Morrocco v. Northwest Engineering Co.,* 6th Cir., 310 F.2d 809, held that there is no duty to warn when the user has actual knowledge of the alleged danger.

■ I am convinced by the depositions and answers to the interrogatories by the plaintiff and Robert Parker that they each had actual knowledge of the flammable propensity of Stoddard's Solvent. Even if they did not have such knowledge the *Burton* case (*supra*) indicates that in a commercial setting the manufacturer or seller has only a duty to warn those employees of the buyer to whom it has access. In that case the court held that, since the defendant had no control over the machine being used or the surrounding work space, it was the plaintiff's employer who would have to provide the warnings. *63 Am.Jur.2d, Products Liability, Section 47* says that: "If the manufacturer has no duty to warn a purchaser who is aware of the product's danger, the manufacturer has no duty to warn the employee of such purchaser."

Since the manufacturers and distributors had no control over the dry cleaning machines or work area at Sparkle Cleaners, if there was a duty to warn it was only to warn Pincus Wexler, plaintiff's employer. Because Mr. Wexler knew the solvent's dangers (see his deposition) there was no duty to warn him. Therefore, because there was no duty to warn the plaintiff, the

failure to warn was not negligent nor does it constitute a defect breaching the implied warranties of fitness for purpose or merchantability. As to those claims dealing with the failure to warn the motion for summary judgment should be granted.

### (2) Defective Manufacture

■ Plaintiff also contends that the manufacturers were negligent in that they failed to manufacture the solvent properly. This is supported by the affidavit of Lorne Cook, plaintiff's expert, that shows that the solvent may have contained impurities.

Since this would also constitute a defect in the product, the implied warranties of fitness for purpose and merchantability would have been breached. Because these warranties apply, if the defect is proved, the seller as well as the manufacturer could be liable.

Because there is a factual question as to whether the solvent was defective, the motion for summary judgment as to the claims of negligent manufacture (to the extent that such negligence would give rise to a defect breaching the implied warranties) should be denied.

However, any holding that a manufacturer or seller is liable must be predicated upon proof that the product in question was one for whose condition the defendant was in some way responsible. Therefore, plaintiff must submit further evidence justifying his claim against the Union/Globe group and/or National Solvents, Inc. within thirty days from this date. If the claim cannot be supported as to any specific defendant, then that defendant should be granted summary judgment.

### Conclusion

For the foregoing reasons Exxon is dismissed from the action and Globe Solvent Supply Co. is not dismissed from the action. Summary judgment is granted as to Section 9(a)–(d), Section 12(a)–(e), Section 13 of the third amended complaint, and Section 11 of the third amended complaint as it relates to a failure to warn. Summary judgment is

denied as to Section 10 of the third amended complaint and denied as to Section 11 of the third amended complaint as it relates to a defect in manufacture.

IT IS SO ORDERED.