**NAXON TELESIGN CORPORATION,**
**Plaintiff,**

v.

**GTE INFORMATION SYSTEMS,**
**INC., Defendant.**

**No. 79 C 3949.**

United States District Court,
N. D. Illinois, E. D.

Dec. 22, 1980.

---

W. Melville Van Sciver, Chicago, Ill., for plaintiff.

John Kozak, Leydig, Voit, Osann, Mayer & Holt, Chicago, Ill., Darby & Darby, New York City, for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Naxon Telesign Corporation ("Naxon") filed this action against GTE Information Systems, Inc. ("GTE"), alleging that GTE had infringed Naxon-owned Patent No. 3,281,824 (the "Patent") by its manufacture, leasing and sale of moving stock ticker displays. This memorandum opinion and order deals with four pretrial motions filed by the parties:

1. Naxon's motion to treat the filing date of this action as retroactive to the filing date of the complaint in *Naxon v. GTE Sylvania, Inc., et al.*, 79 C 1289 ("*Sylvania*" or the "*Sylvania* action"), is denied.

2. Naxon's motion to add Bolling's, Inc. as a party defendant is granted.

3. Naxon's motion for an order approving use of Ronald E. Larson as its patent and technical expert is granted.

4. GTE's motion for separate trials on the issues of liability and damages is granted. Its motion to vacate Magistrate Jurco's discovery order on the damage issue is denied.

*Naxon's Motion To Treat the Filing Date of This Action as Retroactive to the Filing Date of the Complaint in Naxon v. GTE Sylvania, Inc., et al.*

On April 2, 1979 Naxon sued GTE Sylvania, Inc. ("Sylvania") and Ultronic Systems Corp. ("Ultronic") in the *Sylvania* action for the same alleged patent infringements that now form the basis of this action. Because of answers to interrogatories supplied by Sylvania and Ultronic, Naxon discovered that it had sued the wrong parties, for neither defendant had ever used, leased or sold the traveling message systems that Naxon claimed infringed the Patent. Accordingly, in exchange for identification of the party that *did* so utilize the message systems, Naxon stipulated to a dismissal without prejudice of the *Sylvania* action September 21, 1979. On that same date Naxon filed this action against GTE.

Naxon now asks this Court to treat the filing date of this action as retroactive to April 2, 1979 and to vacate the stipulation of dismissal entered in the *Sylvania* action. Naxon maintains that it entered into the stipulated dismissal only because it received misleading and incomplete information from Sylvania and Ultronic and their attorneys, who also represent GTE. Specifically, Naxon asserts that:

(1) Those defendants were obligated to disclose (in response to certain interrogatories) that they were subsidiaries of GTE and that GTE was the party against whom it would have been proper to file suit.

(2) That information was not revealed until Naxon received GTE's answers to certain interrogatories in the present action.

Because the statute of limitations in patent cases bars recovery for any infringement committed more than six years before the complaint is filed, Naxon's motion is critical to recovery for nearly six months of claimed infringements (between April 2, 1973 and September 21, 1973).

Naxon's initial brief cited no authority for the requested relief.[1] In response to this Court's order for a statement of such authority, Naxon's supplemental brief asserted that the "provisions of Rule 60(b) of the Federal Rules of Civil Procedure appear to provide some court in this district with the authority to vacate the stipulated dismissal in civil action No. 79 C 1289." However, on the other prong of its motion Naxon advanced only the unsupported statement that this Court is authorized to change the filing date "in its discretion and in order to do substantial justice . . . under its broad equity powers." On Naxon's own theory then, granting the latter relief is contingent on vacating the stipulated dismissal in *Sylvania* under the authority of Fed.R.Civ.P. ("Rule") 60(b).

But the *Sylvania* action is not properly before this Court—it was assigned to Judge McMillen's calendar at the time of its dismissal and has never been reassigned. Moreover, Naxon has *already* moved in *Sylvania* for, and Judge McMillen *denied*, the identical relief: vacating the stipulation of dismissal. This alone would justify denial of Naxon's motion, for this Court clearly cannot in *this* action enter an order in the *Sylvania* action. Naxon was free to appeal Judge McMillen's order denying its motion in *Sylvania*. In the absence of such an appeal, the matter is really foreclosed here by res judicata.

Lest Naxon nonetheless view itself as somehow involved in a Catch-22 situation,[2]

---

1. Naxon simply referred to Fed.R.Civ.P. 21, 25(c), 37(a)(3), 37(4) and 26(e)(2)(B) in support of its motion. None of those provisions, relating to the discovery stage of an action, provides authority for the requested relief. Once the parties in *Sylvania* entered into the stipulated dismissal agreement, the discovery phase of that action had of course ended.

2. In denying Naxon's motion in *Sylvania*, Judge McMillen expressed doubt about the present date-changing motion (proceedings of June 30, 1980, p. 2):

the Court will also review on its merits the motion to vacate dismissal. Before Judge McMillen, in Naxon's brief to which it referred in the supplemental brief filed in this action, it relied on three subparagraphs of Rule 60(b):

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment.

█ 1. As for Rule 60(b)(1), Naxon essentially contends that (a) because of its reasonable belief that it had sued the proper parties in *Sylvania,* it was "surprised" to learn that it had not, and (b) its error was due to its "inadvertence, mistake or excusable neglect." That argument will not wash. Once defendants' attorney in *Sylvania* informed Naxon that it had sued improper parties, Naxon could no longer claim that it was mistaken or surprised. Moreover, Naxon's attorney agreed to enter into the stipulated dismissal if defendants' attorney would provide him with the name of the proper defendant. It is well established that affirmative tactical decisions of counsel cannot constitute "excusable neglect or mistake" under Rule 60(b)(1). *Federal's, Inc. v. Edmonton Investment Co.,* 555 F.2d 577, 583 (6th Cir. 1977); *United States v. 1,550.44 Acres of Land,* 369 F.Supp. 1078, 1079 (D.N.D.1974).

█ 2. Under Rule 60(b)(3) Naxon argues that Sylvania and Ultronic and their attorneys, who also represent GTE, "misrepresented or concealed" the name of the proper corporate defendant in response to Naxon's interrogatories in *Sylvania.* That contention is equally unpersuasive for a number of reasons. First, none of the interrogatories can be fairly read to have requested the name of the correct defendant. Judgment cannot be vacated under Rule 60(b) on grounds of alleged fraud or misconduct unless the production of certain evidence is clearly called for by any fair reading of the discovery order. *Montgomery v. Hall,* 592 F.2d 278, 279 (5th Cir. 1979). Second, even had Naxon sought discovery of the name of the proper defendant in *Sylvania,* it is questionable whether the wrong defendants would have been required to provide it, for such information would not be "reasonably calculated to lead to the discovery of admissible evidence." *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352, 98 S.Ct. 2380, 2390, 57 L.Ed.2d 253 (1978). Finally, and at the very least, Sylvania and Ultronic were under no affirmative obligation to disclose the proper defendant under the existing circumstances; rather "one in the position of plaintiff's attorney must be diligent in ferreting out the proper parties defendant...." *Martz v. Miller Brothers Co.,* 244 F.Supp. 246, 252 (D.Del.1965).

█ 3. As for the catch-all provision of Rule 60(b)(6), Naxon has simply failed to demonstrate its entitlement to relief under that subsection. Rule 60(b)(6) is only to be invoked in "extraordinary cases." *Ackermann v. United States,* 340 U.S. 193, 200, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); Wright and Miller, Federal Practice and Procedure § 2864, and cases cited therein. This case does not fit that description.

█ Thus Naxon's motion to vacate the *Sylvania* dismissal fails on the merits as well. But even if it were to be granted, an amendment to the *Sylvania* complaint substituting GTE as defendant for Sylvania and Ultronic would not "relate back" to the April 2, 1979 date the complaint was filed in that action. Rule 15(c) provides that claims against a substituted party will relate back only if the new party "knew or should have known that, but for a mistake concerning

---

Well, you can file the motion [in the case before this Court], but I don't see how you are going to change the date of filing in it.

But he stated correctly that he had no control over *this* action, assigned to this Court.

the identity of the proper party, the action would have been brought against him." That notice requirement is not satisfied merely because the proper party and the party for which it is substituted are related corporations, so long as they are distinct corporate entities and circumstances do not justify a piercing of the corporate veil. *See, e. g., Martz v. Miller, supra; Robbins v. Esso Shipping Co. and Esso Standard Oil Co.*, 190 F.Supp. 880 (S.D.N.Y.1960). Here Naxon has failed to demonstrate that type of nexus between Sylvania and Ultronic and GTE, sufficient to support the conclusion that GTE had Rule 15(c) notice of the *Sylvania* action.

■ Accordingly, on each of the several independent grounds stated in this opinion, the Court denies Naxon's motion to treat the filing date of this action as retroactive to the filing date of the complaint in *Sylvania*.

### Naxon's Motion To Add Party Defendant

In its second motion, Naxon seeks to add as a party defendant Bolling's, Inc. ("Bolling's"), an Illinois corporation that owns a restaurant in the Chicago Board of Trade building. Naxon alleges that Bolling's leases one of the stock ticker displays from GTE for use in its restaurant and is therefore liable for the claimed infringement under 35 U.S.C. § 271(a): [3]

> [W]hoever without authority makes, *uses* or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

Naxon then maintains that Bolling's is properly joinable under Rule 19 or 20.

■ Rule 19 provides that a person *shall* be joined in an action if "(1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the ac-

tion" and is so situated that disposition in his absence will "impede his ability to protect that interest or . . . leave any of the persons already parties subject to a substantial risk of incurring . . . multiple or otherwise inconsistent obligations." Joinder of Bolling's under Rule 19 is plainly inappropriate. Naxon, whose brief devoted only a single paragraph to its argument that Rule 19 applies, has simply failed to demonstrate that the situation here comes within the Rule's language or purpose.

Rule 20 authorizes the Court to join parties as defendants if there is asserted against them any right to relief arising out of the same transaction and if any question of law or fact common to all defendants will arise in the action. GTE concedes that joinder of Bolling's would meet those requirements.

However, GTE argues that the circumstances of this action render it appropriate for the Court to exercise its discretion under Rule 20 [4] by denying Naxon's request. GTE contends that courts have traditionally "looked with disfavor on 'customer suits' . . . and favor suits between the patentee and the accused manufacturer," *Codex Corp. v. Milgo Electronics Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185 (1977); and that "patent suits against customers are routinely stayed pending a determination of the main action between the patentee and the manufacturer." *Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969).

*Codex* and *Gluckin & Co.* are inapposite here. Each involved the filing of two lawsuits in different jurisdictions, one against the manufacturer of the alleged infringing item and one against its customers. Those decisions were based on the courts' recogni-

---

**3.** GTE does not contest that as lessee of the stock ticker display, Bolling's would be liable to Naxon under this provision if it is established that the display is an infringement of the Patent.

**4.** See *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126–27 (2d Cir. 1970):

Rule 20, unlike its counterpart, Rule 19, prescribes permissive, not necessary, joinder and specifically vests in the district court the discretionary power to make such orders as may be required to prevent delay or prejudice.

tion that "in reality, the manufacturer is the true defendant in the customer suit" and should therefore have claims against it litigated in the first instance. *Codex, id.* In this action, where suit against the manufacturer and customer would take place simultaneously under Naxon's proposed amendment, the problem addressed in *Codex* and *Gluckin & Co.* is not presented.

■ This Court is mindful of other factors relevant to the exercise of its discretion. If adding Bolling's as a defendant would create considerable delay, prejudice or added expense to GTE's defense, or if the addition of Bolling's were designed to harass GTE's customers (*see, e. g., Sundstrand Corp. v. American Brake Shoe Co.*, 315 F.2d 273 (7th Cir. 1963)), the Court would be inclined to deny Naxon's motion. However, none of those factors appears to be present here, and weighing in favor of the proposed amendment is the fact that it would facilitate consideration of Naxon's recovery, if its claims are meritorious, in a single proceeding. *See, Cold Metal Process Co. v. E. W. Bliss Co.*, 285 F.2d 231, 242–43 (6th Cir. 1960).

Accordingly, Naxon's motion to amend the complaint to add Bolling's, Inc. as a party defendant is granted under Rule 20.

### Naxon's Motion for an Order Approving Use of Ronald E. Larson as Plaintiff's Patent and Technical Expert

Naxon's final pending motion is for an order approving the use of Ronald E. Larson ("Larson") as its patent and technical expert at trial. No issue is now posed as to Larson's technical qualifications to testify as an expert. Instead, the question before the Court is whether Larson's relationship with W. Melville Van Sciver ("Van Sciver"), Naxon's attorney, precludes Larson from testifying, or alternatively disqualifies Van Sciver as counsel to Naxon in this litigation.

Larson is a member of the Allegretti, Newitt, Witcoff and McAndrews law firm ("Allegretti, Newitt" or "the firm"), whose offices are located at 125 South Wacker Drive, Suite 3100, Chicago, Illinois. Van Sciver, a sole practitioner, shares office space with the firm as its sublessee, using the same address. However, as demonstrated by the affidavits of Van Sciver and James V. Callahan, a partner in the firm, there is no relationship between the firm and Van Sciver except for the sharing of office space.[5] Van Sciver maintains separate books, bank accounts and files, none of which Allegretti, Newitt is authorized or permitted to review. Van Sciver is not listed on the firm letterhead or at the entrance to the firm's offices or under the firm's name in the building directory. In turn, Van Sciver's letterhead makes no reference to the firm. None of the clients of Allegretti, Newitt is a client of Van Sciver.

■ GTE maintains that Naxon's use of Larson as its expert at trial is improper because of the firm's office arrangement with Van Sciver, in light of Canon 9 and Disciplinary Rules 5–101 and 5–102 of the Code of Professional Responsibility.[6] That argument is plainly untenable and misses the entire purpose and thrust of the Code provisions.

■ DRs 5–101 and 5–102 expressly address the issue of disqualification where a lawyer "or a lawyer in his firm" may or ought to be a witness in a trial in which that lawyer's client is a party. Larson is simply not a lawyer in Van Sciver's firm, nor Van Sciver in Larson's. Sharing of office space between two lawyers is not in itself sufficient to invoke the application of DRs 5–101 and 102.[7] *J. P. Foley & Co., Inc.*

---

5. Van Sciver also uses the Allegretti, Newitt switchboard and such other services as postage and photocopying, but he is billed by Allegretti, Newitt for any expenses so incurred.

6. GTE cites the ABA version of the Code, which in these respects is identical to the Code as adopted by the Illinois Supreme Court July 1, 1980. This Court's General Rule 8D is out of

date in referring to the Canons of Ethics, which were superseded by the Code over 10 years ago.

7. This Court has written and lectured extensively in the professional responsibility field, also serving for over 10 years (including two years as chairman) on the Chicago Bar Association committee in that area. In the latter

*v. Vanderbilt*, 523 F.2d 1357, 1359 (2d Cir. 1975). As to Canon 9, which states that "A lawyer should avoid even the appearance of professional impropriety," in this Court's view nothing in the office arrangement between the firm and Van Sciver reflects adversely on the professional conduct of either if Larson were to testify here. It must be remembered that the underpinning of the rule against the double role of advocate and witness is the need on the one hand to vouch for one's own credibility (or that of an associate) in the course of argument, and on the other hand to impugn the credibility of opposing counsel—factors clearly inapplicable where the relationships are those present (and absent) here.

GTE has raised three additional makeweight arguments:

1. Van Sciver was once a partner in a predecessor firm of Allegretti, Newitt. Apparently GTE contends that fact raises an "appearance of impropriety" under Canon 9. However, Naxon's reply brief reflects that Van Sciver left the firm of Bair, Freeman & Molinare, the predecessor, in 1966, many years before the present action. At that time Larson had no association with the firm, and since then the firm's membership has undergone substantial change. In short, any residual effect of the former professional association between Van Sciver and the firm is so attenuated that, in the Court's view, it no more raises an appearance of impropriety than does GTE's counsel's conduct in making the argument.

2. Van Sciver "is sufficiently recognized as associated with Mr. Larson's firm that the court reporter in a hearing in the 70 Civ. 1289 action, the predecessor to this present action, identified Naxon's counsel as appearing on behalf of Mr. Larson's firm." That error by a court reporter (no doubt stemming from the street address and office suite shared by the firm and Van Sciver) cannot of course affect the rights of the parties to this litigation. Van Sciver, who appeared on behalf of Naxon at that hearing, promptly informed the court reporter in writing that the designation of counsel listed on the transcript was inaccurate and that he had no association with the firm "in any manner" other than sharing the same address.

3. Allegretti, Newitt will bill Naxon for Mr. Larson's services as an expert, rather than billing Mr. Larson individually. GTE asserts, "This appears to be more than merely hiring an expert; it involves retaining a law firm to provide a witness." That argument does not even attain the level of speciousness (especially since Larson is a *partner* of the firm, rendering his income that of the firm collectively, an arrangement with which the billing procedure to be used here is both consistent and usual).

Accordingly, this Court finds GTE's present objections to the use of Larson as an expert witness in this case without merit. It grants Naxon's motion to approve such use of Larson (without ruling of course on his qualifications or any other matter dealing with the admissibility of his testimony).

### GTE's Motion for Separate Trials on Issues of Liability and Damages and To Vacate Magistrate's Discovery Order on Damage Issue

On its part GTE has just moved that this Court order separate trials on the issues of liability and damages. Concurrently it urges the Court to vacate Magistrate Jurco's order of October 23, 1980 directing GTE to comply with certain discovery requests respecting damages.[8]

capacity, the Court authored an opinion holding office sharing similar in legal effect to that involved in this action (without shared partnership, associate or "of counsel" status) insufficient to disqualify the sharers from representing *opposing* parties in a litigated matter. That opinion emphasized the need for maintaining the integrity of the lawyers' files against cross-access as a condition for non-disqualification, but the same public policy that caused such emphasis illustrates why the same result is equally appropriate here. There is absolutely no reason that the entire Van Sciver file should *not* be made available to whatever expert witness is selected. Indeed, Van Sciver could be delinquent if he did not provide maximum disclosure to the expert.

8. Magistrate Jurco's order was expressly predicated on her finding that "no request has been

Each party has addressed a number of factual issues purportedly related to the propriety of a court-ordered bifurcation in this action[9] and has cited examples of the posture various courts have assumed in addressing bifurcation issues in patent cases. However, those authorities stand for no more than the proposition that this Court is vested with extremely broad discretion to determine whether bifurcation is warranted on the facts of each case, guided by its assessment of what trial format will be conducive to the promotion of judicial economy and the avoidance of prejudice. *See* Rule 42(b).

In this instance, GTE contends that bifurcation will serve those policies in two respects. First it notes that Irving Naxon, owner of Naxon, "is a man of advanced age whose physical condition has been greatly impaired," whose testimony would therefore unfairly arouse the sympathy of the jury. This Court believes that GTE has completely failed to substantiate that contention, and accordingly it has not been taken into account in the Court's consideration of this motion.

However, GTE's second offered justification for separate trials is consistent with this Court's own views regarding bifurcation.[10] Both a single trial and the first phase of a bifurcated trial would require the jury to consider complex issues respecting the Patent, an alleged prior art patent and GTE's Ultrascan system. In addition to these matters, a single trial would require concurrent deliberation over complex damage issues should the jury determine the Patent is valid and was infringed by GTE or, at the very least, unnecessary testimony as to damages should the jury decide for GTE as to liability.[11]

In light of these factors and those mentioned in footnote 10, this Court rules that bifurcation would both simplify the jury's task and promote judicial economy. Accordingly, GTE's motion for separate trials on the issues of liability and damages is granted.

However, even though Magistrate Jurco's order was predicated in part on the fact that bifurcation had not been ordered, in the Court's view discovery on this issue remains appropriate notwithstanding the planned bifurcation at trial. It is far preferable that the same jury consider issues of liability and damages if the second portion of a bifurcated trial proceeds, and this would plainly be impossible if discovery regarding damages were deferred as GTE

made by the defendant and no order entered by the court which separates these issues [liability and damages]," and therefore "interrogatories seeking information relevant to possible damage recovery are to be answered."

**9.** GTE contends that by seeking an injunction and an *accounting* in its complaint, Naxon itself implicitly requested bifurcation, only to withdraw that request (a) in conjunction with another motion pending in this action and (b) by its November 4, 1980 motion for leave to amend the complaint. Naxon argues that its complaint and conduct have demonstrated its unequivocal commitment to having liability and damages determined in a single trial. Whatever the merits of these factual contentions, this Court considers it unnecessary to address them here, as they have no bearing on the disposition of this motion.

**10.** This Court's standard form to be used in preparation of final pre-trial orders states:

Other than for good cause shown, the issues of liability and damages in jury trials will be bifurcated for trial.

That presumption in favor of bifurcation is based not only on the argument advanced by GTE but on the proposition that a jury verdict for defendant as to liability ends the case without the expenditure of time by the Court, the jury and counsel on proof of damages, while a jury verdict for plaintiff permits the trial of damages to proceed before the same jury with no worse a time involvement than if there had been a single trial (this assumes no material overlapping of proof on the issues, a factor taken into account in the original decision regarding bifurcation). Moreover a jury finding of liability may result in more serious and often successful settlement negotiations, again obviating the need for the second trial. On balance, then, there is usually much to gain and little to lose by ordering bifurcation.

**11.** For the reasons set forth at pp. 2–3 of GTE's reply brief, the Court rejects Naxon's contention that the determination of damages in this instance would be relatively simple, therefore justifying a single trial.

proposes. Moreover, under the possibility mentioned in footnote 10 as to settlement discussions in the event of a jury verdict for Naxon regarding liability, it would of course be essential for Naxon to be an informed party in any such discussions. Accordingly, GTE's motion to vacate Magistrate Jurco's order directing it to respond to interrogatories respecting alleged damages is denied.

### Conclusion

In the first paragraph of this opinion the Court specified its orders on the four pending motions. In implementation of the second of those orders, leave is granted Naxon to file instanter the Amended Complaint tendered with its brief filed July 18, 1980; GTE is given leave to file on or before January 9, 1981 its answer to the Amended Complaint or its election that its answer to the Complaint shall stand as such answer; and summons shall issue forthwith to new defendant Bolling's, Inc.